IN RE INTEGRATION OF THE BAR.

*September 9—December 18, 1946.*

524

On September 9, 1946, in response to the invitation extended in the order, briefs were filed as follows, for integration: Messrs. W. T. Doar, Ronold A. Drechsler, Quincy H. Hale, Marcus A. Jacobson, Robert D. Jones, Walter F. Kaye, George Y. King, Robert B. L. Murphy, Samuel P. Myers, Otto A. Oestreich, Andrew W. Parnell, Robert M. Rieser, Edmund B. Shea, John S. Sprowls, and Van B. Wake on behalf of the State Bar Association of Wisconsin; David Keyser,

chairman of the Junior Bar Association of Milwaukee County Committee for Integration; opposed to integration: Messrs. Daniel H. Grady, William B. Rubin, William H. Spohn, J. G. Hardgrove, G. M. Sheldon, Samuil Nissenbaum, and Vernon County Bar Association, J. Henry Bennett, secretary.

The matter was argued orally for integration by Messrs. John S. Sprowls, president of the State Bar Association, Edmund B. Shea, Quincy H. Hale, Robert B. L. Murphy, Robert D. Jones, president of the Milwaukee Junior Bar Association, Otto A. Oestreich, Marcus A. Jacobson, David Keyser, chairman, Junior Bar Association of Milwaukee County Committee on Integration, Ronold A. Drechsler; and opposed to integration by Messrs. Daniel H. Grady, William Ryan, William B. Rubin, William H. Spohn, Samuil Nissenbaum, and by William H. Markham, as *amicus curiæ*.

PER CURIAM.  The matter of the integration of the bar of Wisconsin pursuant to ch. 315, Laws of 1943, and the opinion of the court in *Integration of Bar Case*, 244 Wis. 8, 11 N. W. (2d), 604, 12 N. W. (2d), 699, on motion of Messrs. Quincy H. Hale and John S. Sprowls, next previous and current presidents, respectively, of the existing voluntary Wisconsin State Bar Association and others particularly mentioned in the statement preceding this opinion is before the court.  The questions referred to in the statement preceding this opinion on which the court invited briefs and argument by members of the bar are here particularly set forth:

1.  Should the bar of the state of Wisconsin be integrated?

2.  Is ch. 315, Laws of 1943, invalid by reason of the provisions contained therein that membership in the association to be known as the "State Bar of Wisconsin," should be a condition precedent to the right of one admitted to the bar to practice law in the state of Wisconsin?

3.  May the court by an order of integration validly impose the payment of a reasonable fee annually as a condition of mem-

bership in the association to be organized and known as the "State Bar of Wisconsin?"

4. Is the admission of a lawyer to the practice of the law a final judgment which cannot be impaired or its benefits withdrawn except for loss of character or incompetency?

5. Should a master or referee or a panel of lawyers or jurists be appointed to take testimony on the merits of the proposal to integrate the members of the bar of the state of Wisconsin and to make findings based on the evidence received and submit the same to this court with recommendations?

6. Assuming solely for the purpose of consideration of the matter that an order of integration will be entered—

(a) Are any of the provisions of the proposed order invalid?

(b) Do the provisions of the proposed order—

(1) Present a workable plan?

(2) Promote the best interests of the profession and the public interest and aid in the efficient administration of justice?

7. If any provision of the proposed order is considered objectionable, please state reasons and propose a substitute.

Assuming, but not deciding, that questions 2 and 4 should be answered "No" and that the court for reasons which in its judgment are sufficient may integrate the bar, we hold that question 1 should be answered "No" for the reasons hereinafter stated.

As to question 5 we will only say that we perceive no occasion to take testimony and report as to the advisability of integration. It could hardly result in more than obtaining the opinion of the individual members of the bar and of the public and a report upon the comparative numbers of those desiring and those opposing integration. We are informed from the briefs and arguments presented at the hearing of the motion, that individual opinions are contradictory and it is not material which opinion predominates or how much. The responsibility for deciding the motion is ours. Assuming that integration

would be constitutional, decision for it must rest on whether in our judgment it would be in the public interest.

Questions 1 and 3 are closely related. In the original opinion we expressly reserved the question whether this court could require members of the bar to pay dues in support of an integrated bar. A consideration of this question is necessarily inseparable from a consideration of the question whether the court should integrate the bar, because the fees are the life-blood of the integrated bar, and to integrate the bar without fees would be useless. Such cases as we have examined, passing upon this point, hold that the court may require payment of dues. *A. C. Brydonjack v. State Bar of California,* 208 Cal. 439, 281 Pac. 1018, 66 A. L. R. 1507; *In re Gibson,* 35 N. M. 550, 4 Pac. (2d) 643; *State Bar of Oklahoma v. Mc-Ghee,* 148 Okla. 219, 298 Pac. 580; *Kelley v. State Bar of Oklahoma,* 148 Okla. 282, 298 Pac. 623; *Petition for Integration of Bar of Minnesota,* 216 Minn. 195, 12 N. W. (2d) 515; *In re Scott,* 53 Nev. 24, 292 Pac. 291. All of them very briefly justify the fees as an occupational license. This analogy cannot be pressed too far, although it has some vitality, because the license of occupations is clearly a legislative function. Further than this, license money should properly go into the treasury of the state and be appropriated. It must be appropriated for a public purpose, it requires a strict limiting of purposes of the integrated bar, and it raises embarrassing problems of auditing.

The justification for integrating the bar and compelling payment of fees is not that suggested by the cases above cited. It is rather that the court has inherent power to control and regulate its bar as officers of the court, and that this power may be implemented by dues from the members which serve in a measure the function of license fees, but which are not such in a legal sense. In other words, the court by reason of its inherent or implied powers may, if it thinks the exigencies call for it, require the bar to act as a unit, to promote high standards

of practice and the economical and speedy enforcement of legal rights, and to implement this may require the bar to make such contributions in money to the joint effort as is deemed necessary and proper. No matter what these fees be called, they are moneys required to be paid into the treasury of the bar for a public purpose connected with the administration of justice. It appears to be assumed in all the briefs that the court will fully exhaust its function by setting up the organization and requiring dues to be paid and that from there on the court will leave the organized bar to operate in a completely democratic and voluntary manner, dealing with such problems as in the opinion of the bar are proper for them to consider and to solve, and expending its moneys for these democratically ascertained purposes.

Nothing is further from the truth in our opinion. It appears to us that the same considerations that may call for the court to exercise power initially to integrate, require it to censor the budgets and activities of the bar after integration. If the moneys do not go into the state treasury and are not subject to audit or to the legislative process of appropriation in which the public character of the purposes for which the moneys are used may be considered, this court must assume the responsibility of seeing that activities of the bar for which these moneys are paid are sufficiently public to warrant the use of the money for their promotion.

Indeed, this is recognized by the preamble to the proposed rules governing the State Bar Association of Wisconsin which states that the bar "are organized as a self-governing body of officers of the court, *subject to the constitutional authority and rules of this court.*" This is a self-contradictory declaration. The bar as integrated would be definitely subordinate to the court and under the disagreeable necessity of having its activities policed by the court and, this being true, the price of integration would be much greater than this court or any lawyer ought to be willing to pay, unless the exigencies in respect to standards of admission and discipline are so great as to war-

rant adoption of some such expedient, either temporarily or upon a limited scale.

Examination of the proposed rules for Wisconsin indicates no general statement of purpose, and there is no specification of activities except those having to do with complaints and grievances. These, of course, would merely implement without supplanting the work of the state bar commissioners. We have also examined the rules of the Michigan integrated bar and discover no specified list of activities of the bar association other than those relating to discipline.

We think that this court could permit any activity supplementary to the activities of the board of bar commissioners; it could authorize a study of standards of admission to the bar or, as the existing voluntary bar association is now doing to some extent, initiate a system of post-law school or post-admission education so that members of the bar might be able to keep up to date upon the latest legal developments. There are a group of activities, however, for which we think the integrated bar could not use its dues. It could not maintain a legislative agent. It could not use its dues for any purpose advantageous to its members that did not also further the good of the general public. We doubt whether it could conduct propaganda in defense of the legal profession. We feel quite sure that it could not seek legislative definition of the boundary lines of the legal profession so as to exclude accountants, labor agents, and others from the trial of cases before commissions which do not require parties to have lawyers, and that, we understand, is one of the purposes for which the integrated bar would want to work. It could properly consider judicial qualifications, tenure, salary, or pensions, but carrying its conclusion into effect could only be done with the greatest embarrassment to bar and bench. The funds ought not to be used in judicial campaigns although members of the bar can properly act in this field. It requires a very short look at some of the possible activities of the bar to make it clear that this court would have to insist upon scrutinizing every activity for which it is proposed to expend

funds derived from dues, and that a series of situations would arise that would be embarrassing to the relations of bench and bar. The bar ought to have the untrammeled power of acting in unison to consider any matter close to the administration of justice in which the members have special competency without any feeling that its activities are subject to control or censorship.' A free and voluntary bar, even though embarrassed by lack of funds, is to be preferred to one that is or feels itself to be dominated by the court unless some exigency tips the scales in favor of the latter.

No one contends that we are confronted with serious disciplinary problems. We have the highest standards of admission and no complaint is made on that score. No one contends that such problems of discipline as may develop cannot be solved under our present system provided by sec. 256.28 (6) to ' (16), Stats. There is no contention or suggestion that problems of admission and discipline are not now being taken care of well, and this is of weight in determining the advisability of integration. We are therefore not confronted with questions of admission or discipline that may have existed in other states when it was considered advisable to integrate. A post-law school or post-admission education of lawyers is nebulous in outline and probably expensive in execution but is a proper objective. There are doubtless many other useful activities for which dues might properly be used, but what they are does not occur to us and no particular one seems to press for action. There is no crisis in any important matter.

While the enactment of ch. 315, Laws of 1943 (sec. 256.31, Stats.), may be considered a declaration of public policy and entitled to great consideration by this court, we consider that the following of it under the present conditions would embarrass the court in the discharge of its functions.

We acknowledge a considerable degree of sympathy for the aspirations of those who favor an integrated bar. There is no doubt of their sincerity of purpose and their conviction that

this would produce highly desirable results. All these results, however, would result from an adequately supported voluntary association. We regret that a nearly complete support of the existing bar associations by members of the bar has not been achieved, and advocate its complete and wholehearted support by the individual members of the bar. But because we are satisfied that an integrated bar would destroy some of the virtues of a voluntary association and would impose upon the court embarrassing duties of censorship and audit which might lead to unfortunate misunderstandings between the bench and the bar, in absence of any exigency requiring integration, we deny the motion and dismiss the petition.

RECTOR, J., took no part.