STATE EX REL. ARMSTRONG, and others, Petitioners, v. BOARD OF GOVERNORS OF STATE BAR OF WISCONSIN, Respondent.

Supreme Court

*No. 78–406–W. Argued November 22, 1978.—Decided January 9, 1979.*
(Also reported in 273 N.W.2d 356.)

For the petitioners: *John E. Armstrong, James C. Herrick, John F. Jenswold, Trayton L. Lathrop*, all of Madison and *David S. August* of Whitefish Bay, and oral argument by *James Herrick* and *Trayton L. Lathrop*.

For Personal Interest Group: Oral argument by *Meyer Papermaster* of Milwaukee and *Douglas Kammer* of Portage.

For respondent: Oral argument by *Robert F. Boden* of Milwaukee.

*PER CURIAM.* On July 7, 1978, a petition signed by more than 400 members of the State Bar of Wisconsin was filed with the association's Board of Governors directing it to submit the following three questions to the membership pursuant to the referendum procedure set forth in State Bar Rule 7.

"I. Should it be the policy of the State Bar that attorneys should not be forced, by the sovereign power of the state, to support the lobbying, political, social and other non-governmental activities of the State Bar?

"II. Should the following proposed change in Rule 2, Section 5 of the State Bar Rules be deemed adopted?"

(The change would make payment of the portion of the dues for State Bar operations voluntary and not subject to the penalty provisions contained in the State Bar Rules for non-payment of dues.)

"III. Should it be the policy of the State Bar to urge the Supreme Court to take appropriate action to assist the orderly transformation of the mandatory character of the State Bar to a voluntary association?"

Rule 7, Section 3 provides: "The board of governors shall, in like manner, submit the determination, (*sic*) by the members of the association, any question of association policy, including proposals for changes in the Rules or By-laws, whenever directed so to do by a petition signed by not less than three hundred active members of the association." Attached to the Petition for Referendum was a letter from petitioners to the Board of Governors setting forth measures to be adopted by the Board in connection with the requested referendum.

The Board of Governors rejected the petition and refused to submit the three questions proffered by peti-

tioners on the following grounds: (a) the questions were not of association policy, (b) if they were answered in the affirmative by a majority of the membership, the State Bar would effectively be converted into a voluntary association, and (c) the questions were "unfair, misleading and argumentative." The Board of Governors took the position that neither the Board of Governors nor the membership has the authority to change the State Bar into a voluntary association.

Petitioners then filed a petition with this court asking that we take original jurisdiction of the matter and order the Board of Governors to submit petitioners' questions to the membership as required by the referendum procedure. The Board of Governors filed a response to the petition, and the parties, as well as members of the public, presented arguments to the court at a hearing held November 22, 1978.

The State Bar referendum rule is mandatory: "The board of governors shall . . . submit . . . ," but there is no rule which provides for appeal or review in the event the Board of Governors refuses to submit questions to the membership when a request is made by the requisite number of members. As this court has supervisory authority over the association and the State Bar Rules provide for review by this court of changes in membership dues (Rule 2, Section 5), changes in State Bar By-laws (Rule 13, Section 2), and the performance of the State Bar in carrying out its public function (Rule 10), we conclude that this court is the most appropriate forum to which this matter may be presented. We therefore grant petitioners' request that we take original jurisdiction to decide whether to grant the relief requested.

Petitioners take the position that under Rule 7 the Board of Governors has no discretion to refuse to submit their questions as written. Petitioners argue that the

questions are "of association policy," but they assume that Rule 7 requires the Board of Governors to submit questions *verbatim* as they are presented. There is nothing in the referendum procedure which requires the Board to do so, except as may be implied with respect to specific proposals for amendment of the State Bar Rules.

The Board of Governors is a representative body charged with the management and direction of the bar association. When 300 or more active members of the bar join to request that a matter of State Bar policy be put before the entire membership by referendum, the Board of Governors, whatever its own feeling on the question, must faithfully and conscientiously represent the membership, both those invoking the referendum procedure and those who have the right to vote on questions of association policy. It has the duty under Rule 7 to submit questions of association policy to the membership in a form that is clear, intelligible and meaningful, for the results of the referendum, as determined by a majority of the votes cast, "shall control the action of the association, the board of governors, the officers, sections and committees." Rule 7, Section 4.

However, Questions II and III do not deal with association policy. Question II seeks to change the State Bar into a voluntary association by vote of the membership. The fact that it is put in the form of a proposed rule amendment does not make it a matter of "association policy." If the amendment were adopted as proposed the bar's operations would be financed solely by the dues paid in voluntarily. Question III assumes that such change has been effected.

We have consistently held that the sole authority to require membership in the State Bar of Wisconsin and payment of dues to it as a condition of practicing law in the state rests with this court. *Integration of Bar*

*Cases,* 244 Wis. 8, 11 N.W.2d 604, 12 N.W.2d 699 (1943) ; 249 Wis. 523, 25 N.W.2d 500 (1946) ; 273 Wis. 281, 77 N.W.2d 602 (1956) ; 5 Wis.2d 618, 93 N.W.2d 601 (1958). In our most recent statement on continuation of the unified bar, we noted that "the large majority of Wisconsin lawyers, support, or at least do not oppose, the unified bar," and for that and other reasons set forth in our opinion we made no change in the unified status of the State Bar. *In re Regulation of the Bar of Wisconsin,* 81 Wis.2d xxxv, xxxvi, xxxvii (1978). The opinion of Wisconsin lawyers on the question is of interest to us, but the decision is one of court policy, not bar association policy. Petitioners' Questions II and III are not proper ones for submission to membership vote by referendum.

Question I appears to be one of association policy, but its meaning is unclear. There are "non-governmental" State Bar activities which we have held to be appropriate functions of the bar. For example, we have found ". . . that one of the State Bar's major functions has always been delivery of legal services, . . . and we believe this should continue and be emphasized." *Id.,* at xxxix. State Bar support of legal education activities is another function which we have approved. *Id.,* at xxxviii. Question I goes beyond association policy and invades the province of this court to provide for the organization and government of the bar. Consequently, it is not appropriate for submission to the membership for referendum vote.

The fact that such question is put forward for submission to membership vote is symptomatic of the dissatisfaction which many lawyers have expressed with State Bar activities. The report of the committee which we appointed on November 1, 1976, to study the State Bar, chaired by Judge Andrew Parnell, indicated significant lawyer opposition to the association's role in legislative lobbying, filing *amicus* briefs and participating in judicial and administrative rulemaking. Mindful of the

issues raised in *Lathrop v. Donohue,* 10 Wis.2d 230, 102 N.W.2d 404 (1960), we said:

"For this reason the State Bar has been authorized to engage in legislative activities only as to matters concerning the administration of justice and the practice of law, including matters of substantive law on which the views of lawyers have special relevance. The guiding principle of the Bar in its legislative activities as in all of its other functions must always be the public interest." 81 Wis.2d at xxxix–xl.

In its brief and during oral argument the Board of Governors stated that at the time it rejected petitioners' referendum questions it voted to conduct its own advisory *poll* of the membership on the question: "Do you favor the continuation of the State Bar of Wisconsin as an integrated bar?" Our decision does not affect the right of the Board of Governors to do so.

For the reasons set forth we, by a divided vote, deny the relief requested.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. I do not think the court's decision in this matter should turn on whether the three questions relate to Bar Association policy. The court's decision in this matter should be based on a practical consideration, namely whether the court is willing to consider at this term the issue of the continuation of the integrated bar if a substantial number of attorneys express dissatisfaction with the current performance of the Bar or interest in "disintegrating the Bar." Because I do not believe that the court should now consider the issue of the functions of or continuation of the integrated bar, I believe the court under its supervisory authority over the Bar should refuse to direct the submission of the three questions to the Bar membership at this time.

On December 29, 1976 this court appointed a committee (known as the Parnell Committee) to study the

Bar and to make recommendations to the court on four questions:

"(1) the concept of the integrated bar and whether it should be continued in Wisconsin; (2) the type of activities in which the State Bar should engage; (3) the appropriate means of financing the activities of the State Bar, including the extent to which continuing legal education activities provide funds for other Bar activities; (4) the management of State Bar funds, including budget development, accountability for expenditures, and the development and use of surpluses." 81 Wis.2d xxxv.

These are the very issues which the three referendum questions address.

The Parnell Committee held hearings around the state and filed its report on August 1, 1977. The court held a public hearing on October 24, 1977, and on November 18, 1977 the court issued a *per curiam* opinion relating to the operations of the Bar and an order amending the Bar rules. This order went into effect January 1, 1978, just one year ago.

This court should not authorize a referendum unless it would seriously consider the results of the referendum. I do not believe this court should again consider the operation of the Bar and the continuation of the integrated Bar this soon after the Parnell Committee study. I believe the State Bar should be given at least three years of operation under the new rules before the attorneys of this state and the court pass judgment on the continuation of an integrated bar.

DAY, J. (*dissenting*). I dissent. I would grant the petitioners' request.

The majority correctly holds that the Board of Governors of the State Bar has the duty under State Bar Rule 7 to submit to the membership by referendum questions of bar association policy when requested to do so by 300 or more active members. I do not agree, how-

ever, with the majority's holding that the petitioners' three questions are not matters of State Bar policy on the ground that they seek to change the State Bar into a voluntary association.

An affirmative vote on any or all of the three questions would not, in itself, effect such a change. The vote of the bar's membership on referendum questions controls the action of the association, the Board of Governors, the officers, sections and committees, but such effect is binding only to the extent that State Bar Rules contain no provisions to the contrary.

State Bar Rule 13 provides two means for amending the association's rules: proposals for amendment or abrogation of those rules may be presented to the court either by petition of the Board of Governors or by petition of the assembly of members. The referendum rule provides for submission to the membership of any question of association policy, including proposals for changes in the rules, and as to a referendum requested by the assembly of members, it requires that a resolution "directing the board of governors to propose changes in the Rules" first be adopted at two consecutive meetings of the assembly. Read together, these rules give to the membership voting in a referendum the right to have proposals for rule amendment or abrogation presented to the court by petition of the Board of Governors.

Thus, for example, the rule on sanctions for non-payment of membership dues cannot be changed by vote of the membership; membership vote can, however, require the Board of Governors to petition the court for such rule change. Likewise, the rules governing the activities of the State Bar cannot be changed solely by vote of the membership.

The Board of Governors concedes that the question of what the State Bar's position should be as to continued integration is a matter of association policy and is ap-

propriate for submission to the membership by a Rule 7 referendum. The binding effect of an affirmative vote on the petitioners' questions would be limited to the State Bar's bringing to the court its membership's position on the matter of continued integration. The decision on that question is the court's.

The petitioners have complied with the requirements of the State Bar referendum rule, and the questions they propose deal with association policy. Consequently, the petitioners are entitled to have their questions submitted for determination by the membership and, further, to have that determination presented to the court.