# IN the MATTER OF the REVIEW OF the STATE BAR DUES INCREASE.

Supreme Court

*No. 86–0978–OA. Filed March 9, 1987.*

(Also reported in 407 N.W.2d 228.)

PER CURIAM. This is an original action filed by 25 members of the State Bar (Petitioners) pursuant to SCR 10.03(5), requesting review of the recent increase in State Bar dues. Supreme Court Rule 10.03(5) provides that State Bar membership dues may be changed in two ways: by vote of the Assembly of Members at an annual or midwinter meeting of the State Bar or by a referen-

dum of the membership. The issue in this case is which method takes precedence when both are requested.

We conclude that when the Board of Governors formally votes to place a question before the membership at the next Assembly of Members, no petition may be filed with respect to that issue until the Assembly has acted. Because the petition for referendum in this case was filed after the Board of Governors had formally acted but before the Assembly action, the petition was a nullity as was the subsequent referendum submitted to the membership pursuant to that petition. Consequently, the dues established by the January, 1986, Assembly of Members stand. The petitioners, however, are free to timely file a new petition with respect to the level of State Bar dues.

The petitioners and the State Bar have stipulated to the facts necessary to the determination of the action. On August 23, 1985, the State Bar Finance Committee voted unanimously to recommend to the Board of Governors that the January 1986 Assembly be asked to increase State Bar dues. At its October 12, 1985, meeting the Board of Governors voted to place the dues increase proposal as recommended by the Finance Committee on the agenda for the January 30, 1986, Assembly.

On November 22, 1985, the State Bar received petitions signed by 303 State Bar members requesting that a referendum rather than an Assembly vote be held to decide the level of State Bar dues. In early December the State Bar received 108 additional signatures supporting the referendum request.

On December 13, 1985, the Board of Governors unanimously approved holding a referendum on the dues issue following the January 30, 1986, Assembly vote on the issue. Official notice of the January Assembly

agenda, including the dues increase agenda item, appeared in the December 1985 *Bar Bulletin.*

On January 30, 1986, the Assembly vote on the dues increase proposal was held. It passed by a vote of 228 to 110. Official notice of the Assembly action was communicated to the members in the March 1986 *Bar Bulletin.*

Referendum ballots were mailed to State Bar members, along with the regular spring State Bar election materials, on April 30, 1986. The last day for voting in the spring State Bar election and the dues referendum was May 16, 1986. None of the three questions presented in the referendum received a majority of the votes cast.

The Petitioners challenge the validity of the January, 1986, Assembly of Member's vote on the level of State Bar dues. The issue we must decide to determine the validity of that vote is which method of setting bar dues takes precedence when both are requested. Supreme Court Rules authorize two distinct methods of setting bar dues. Supreme Court Rule 10.03(5) permits changes in the level of bar dues by (1) "a vote of the membership at an assembly session at an annual or midwinter meeting of the state bar" or (2) "in a referendum of the members." We will describe in turn how each method is invoked.

An Assembly of State Bar members must be held at each annual and midwinter meeting of the State Bar. Supreme Court Rule 10.07(2) further directs that major policy issues including "funding of the state bar" may be included on the Assembly agenda. A policy matter may be placed on the agenda if suggested in writing by at least 10 members. Agenda items for Assembly consideration are also submitted by the 46 member Board of Governors which is charged by rule with managing and directing the affairs of the State Bar. Supreme Court Rule 10.05(1). The Board of Governors is comprised of 33

elected representatives from the several state bar districts, the five elected officers of the State Bar, the past president of the State Bar, one representative selected by the Young Lawyers Division, one from the Government Lawyer Division, three from the Nonresident Lawyer Division and three nonlawyers appointed by the Supreme Court. The Board of Governors is specifically directed to "take action on reports and recommendations" submitted by committees and members. Supreme Court Rule 10.05(4)(a)4.

State Bar members must be notified of the time, place, and agenda of an Assembly of members at least 15 days in advance. Notice can be effected by mail or publication in the *Bar Bulletin.* Three hundred members comprise a quorum of the Assembly. Supreme Court Rule 10.07(2). At an Assembly, members "may consider and take binding action upon any matter on the agenda." Supreme Court Rule 10.07(3).

Alternatively, State Bar policy, including the level of bar dues, may be decided by a membership referendum vote. Supreme Court Rules 10.03(5)(a) and 10.08(3). A referendum vote may be initiated by the Board of Governors, vote of the Assembly or by petition signed by not less than 300 active State Bar members. Supreme Court Rule 10.08(1)–(3). Supreme Court Rule 10.08(4) specifically provides that "[t]he result of a referendum as determined by a majority of the votes cast ... shall control the action of the association."

The Supreme Court Rules do not explicitly address which dues setting process, Assembly action or referendum of members takes precedence when both are invoked or whether one is preferable to the other. Thus, the court must interpret the rules to determine the validity of the January 1986 Assembly action increasing dues and the precise effect of the referendum. We must

harmonize the two procedures available for setting the level of dues.

We conclude that efficient management of the State Bar and the orderly resolution of policy issues require that a referendum petition submitted after the Board of Governors votes to place the same issue on an Assembly agenda for a vote cannot preempt that Assembly vote. The rule which allows for a referendum of the members by the filing of à petition signed by not less than 300 active members is not designed to allow a minority of the membership to disrupt orderly organization procedures nor to thwart the will of the majority of the membership. It is designed to allow an issue to be placed before the full membership in a referendum when 300 or more active members deem an issue to be of such importance that the entire membership should consider the issue. It is designed to allow them to be fairly heard and to have the issue they have raised fairly considered.

At its August 16, 1985, meeting, State Bar President Donald Heaney informed the State Bar Board of Governors that the Finance Committee would be meeting on August 23, 1985, to discuss State Bar finances and plan for a dues increase. On August 23, 1985, the State Bar Finance Committee voted unanimously to recommend to the Board of Governors that the dues be increased. At its October 12, 1985, meeting, the State Bar Board of Governors voted to place the dues increase proposal recommended by the Finance Committee on the agenda for the January 30, 1986, Assembly of Members. Thus, by the time the State Bar received the petition with 303 signatures requesting a referendum on the issue on November 22, 1985, the formal procedures authorized by SCR 10.03(5) were well underway. The Board of Governors is elected by the entire membership and is responsi-

ble to that constituency. Certainly a decision to place an issue regarding an increase in dues before the Assembly is not made lightly. Once the Board of Governors has formally voted to do so, its action should be allowed to run its course.

If 300 or more potential petitioners are satisfied with the results of the Assembly action, the necessity for a referendum is avoided, thereby saving time, effort and financial resources of all members of the bar. If 300 or more members remain dissatisfied after the Assembly action, they may file a petition by collecting 300 members' signatures and submitting a petition after the Assembly vote. Thus, the minority's position can still be heard and voted on by the full membership.

■

Neither party requested that the petition and subsequent referendum be nullified. Nevertheless, we hold that because the petition for referendum was filed after the Board of Governors vote, the petition and the subsequent referendum were a nullity. The action of the Assembly on the dues increase issues is valid and binds the association until subsequent Assembly or referendum action changes the level of State Bar dues. We emphasize and the State Bar concedes that by filing a new petition 300 members could secure a referendum vote to decide the level of State Bar dues.

We recognize that additional codified procedures are necessary to harmonize SCR 10.03(5) and SCR 10.08(3), and to assure fair and orderly conduct of State Bar referenda. Many of the issues raised in this case—time requirements for the filing of a petition, the obligation (if any) of the State Bar to facilitate petitioners' communications with the entire membership, and other issues—are more appropriately addressed by rulemaking.

The rules contemplate, and fairness requires, a referendum which will yield a single definitive result.[1] If a referendum does not produce a majority vote for a proposition as was the case in the referendum on the level of bar dues, SCR 10.03(5), which provides for setting dues levels by referendum and SCR 10.08(3), which provides for resolution of "any question of association policy," are rendered meaningless. This court has previously explained the obligation of the Board of Governors to see that a fair and effective referendum is held:

> "When 300 or more active members of the bar join to request that a matter of State Bar policy be put before the entire membership by referendum, the Board of Governors, whatever its own feeling on the question, must faithfully and conscientiously represent the membership, both those invoking the referendum procedure and those who have the right to vote on questions of association policy. It has the duty under Rule 7 [currently SCR 10.08] to submit questions of association policy to the membership in a form that is clear, intelligible and meaningful, for

---

[1] Supreme Court Rule 10.08(4) clearly contemplates that a referendum will produce a single definitive result. It states in part: "The result of a referendum, as determined by a majority of the votes *as determined by a majority* of the votes cast, when duly ascertained shall be published by the board of governors in the official bar bulletin and shall control the action of the association, the board of governors, the officers, sections and committees." (Emphasis added.)

The State Bar asserts that because none of the three questions received a majority vote, the Assembly approved dues structure would remain intact. The flaw in that argument is that one of the questions presented in the referendum was approval of the dues increase as voted on by the Assembly of Members. Because none of the three questions received a majority of votes, the referendum did not decide anything.

the results of the referendum, as determined by a majority of the votes cast, 'shall control the action of the association, the board of governors, the officers, sections and committees." *State ex rel. Armstrong v. Board of Governors,* 86 Wis. 2d 746, 750, 273 N.W.2d 356 (1979).

We urge these petitioners, the Board of Governors or any other member of the State Bar to petition this court for rules which would establish additional procedures to regulate State Bar referenda.

For the reasons set forth above, we deny the relief requested by the petitioners.