STATE of Wisconsin, Plaintiff-Appellant,

v.

Michael B. HOLMES, Defendant-Appellant,

Honorable Robert O. WEISEL, Respondent.
[Case No. 81–1669–CR.]

STATE EX REL. Darian HUDSON, Petitioner,

v.

MILWAUKEE COUNTY CIRCUIT COURT, BRANCH 34, Honorable Ralph Adam Fine, presiding, Milwaukee County Clerk of Circuit Court, Criminal Felony Division, Respondents,

STATE of Wisconsin, Intervenor-Respondent.
[Case No. 81–1774–W.]

Supreme Court

*Nos. 81–1669–CR, 81–1774–W. Argued December 3, 1981.— Decided February 2, 1982.*

(Also reported in 315 N.W.2d 703.)

For the plaintiff the cause was argued by *David J. Becker*, with whom on the briefs was *Bronson C. La Follette*, attorney general. [Case No. 81–1669–CR.]

For the defendant there was a brief and oral argument by *Brent J. Hammarback* of Spring Valley. [Case No. 81–1669–CR.]

For the respondent there was a brief by *David L. Walther, John Sundquist* and *Walther & Halling* of Milwaukee, and oral argument by *David L. Walther.* [Case No. 81–1669–CR.]

Amicus curiae brief was filed by *John C. Mitby, Steven J. Schooler* and *Brynelson, Herrick, Gehl & Bucaida* of Madison, for State Bar of Wisconsin and the Litigation Section of the State Bar of Wisconsin. [Case No. 81–1669–CR.]

For the petitioner there was a brief and oral argument by *Harvey Goldstein* of Milwaukee. [Case No. 81–1774–W.]

For respondent, Honorable Ralph Adam Fine, there was a brief by *David L. Walther, John Sundquist* and *Walther & Halling* of Milwaukee, and oral argument by *David L. Walther.* [Case No. 81–1774–W.]

For intervenor-respondent the cause was argued by *Daniel S. Farwell*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general. [Case No. 81–1774–W.]

SHIRLEY S. ABRAHAMSON, J. Each defendant filed a request for substitution of judge in a timely manner and in proper form pursuant to sec. 971.20, Stats.

1979–80. Each circuit court denied the request on the ground that sec. 971.20 is an unconstitutional legislative interference with the functioning of the judicial branch in violation of the Wisconsin Constitution.

Sec. 971.20 permits a defendant to file a statement that "the defendant requests a substitution for the Hon. . . . as judge." Sec. 971.20(5), Stats. 1979–80. The request for substitution need give no reason for the requested substitution and no grounds for substitution need be proved. When the request for substitution is filed in proper form and in a timely manner, the circuit judge to whom it is addressed loses authority to act in the case.[1] Sec. 971.20 creates what is often called

---

[1] Sec. 971.20, Stats. 1979–80, provides as follows:

"971.20 **Substitution of judge.** (1) *The defendant or the defendant's attorney may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case.* The request shall be signed by the defendant or the defendant's attorney personally and shall be made before making any motion or before arraignment. If a new judge is assigned to the trial of a case, a request for substitution must be made within 10 days of receipt of notice of assignment, provided that if the notice of assignment is received less than 10 days prior to trial, the request for substitution must be made within 24 hours of receipt of the notice and provided that if notification is received less than 24 hours prior to trial, the action shall proceed to trial only upon stipulation of the parties that the assigned judge may preside at the trial of the action.

"(2) *Upon the filing of the request in proper form and within the proper time the judge named in the request has no authority to act further in the case* except to conduct the initial appearance, accept pleas of not guilty, and set bail. Except as provided in subs. (7) and (8), no more than one judge may be substituted in any action.

"(3) In addition to the procedure under sub. (1), a request for the substitution of a judge may also be made by the defendant at the preliminary examination except that the request must be filed at the initial appearance or at least 5 days before the preliminary examination unless the court otherwise permits.

a peremptory right to substitution, and we shall sometimes refer to sec. 971.20 as a peremptory substitution statute.[2]

"(4) When a judge is substituted under this section, the clerk of circuit court shall request assignment of another judge under s. 751.03.

"(5) *The request in sub. (1) may be in the following form:*

"STATE OF WISCONSIN,

". . . . . County,

". . . . . Court

"State of Wisconsin

"vs.

". . . . . (Defendant)

"Pursuant to s. 971.20 the defendant requests a substitution for the Hon. . . . . as judge in the above entitled action.

"Dated. . . . .

". . . . . (Signed by defendant personally)

"(6) Upon the filing of an agreement signed by the defendant in a criminal action or proceeding, by the prosecuting attorney, by the original judge for which a substitution of a new judge has been made, and by the new judge, the criminal action or proceeding and pertinent records shall be transferred back to the original judge.

"(7) If the judge who heard the preliminary examination is the same judge who is assigned to the trial of that case, the defendant or the defendant's attorney may file a request under sub. (1) within 7 days after the preliminary examination or at the time of the arraignment, whichever occurs first, and still retain the right for one additional request under sub. (1).

"(8) If upon an appeal from a judgment or order or upon a writ of error the appellate court orders a new trial or reverses or modifies the judgment or order in a manner such that further proceedings in the trial court are necessary, the defendant or the defendant's attorney may file a request under sub. (1) within 20 days after the entry of the judgment or decision of the appellate court whether or not another request was filed prior to the time the appeal or writ of error was taken." (Emphasis added.)

[2] Black's Law Dictionary, Revised Fourth Edition (1968), p. 1295 (1968), defines peremptory: "Imperative; absolute; conclusive; positive; not admitting of question, delay, or reconsideration. Positive; final; decisive; not admitting of any alternative. Self-determined; arbitrary; not requiring any cause to be shown."

We use the phrase peremptory substitution to describe a procedure, like that created in sec. 971.20, whereby substitution is per-

The two cases which present the issue of the unconstitutionality of sec. 971.20 have come to this court by different procedural routes. In *State v. Holmes,* Case No. 81–1669–CR, the defendant, Michael B. Holmes, charged with operating a motor vehicle while under the influence of an intoxicant, filed a request for substitution pursuant to secs. 971.20 and 345.315, Stats. 1979–80.[3] The circuit court for Polk county, Robert O. Weisel, circuit judge, against whom the substitution request had been filed, set a hearing upon its own motion for the purpose of considering the constitutionality of the statutes governing substitution of judges.[4] By memorandum decision dated August 21, 1980, the circuit court for Polk county declared that all statutes governing substitution of judges "violate the Separation of Powers Doctrine" and denied the defendant's request for substitution. Both the state and the defendant petitioned the court of appeals for leave to appeal this non-final order. The court of appeals granted the petition for leave to appeal, sec. 808.03 (2), Stats. 1979–80, and certified the matter to this court pursuant to sec. 808.05 and sec. (Rule) 809.61, Stats. 1979–80. On October 6, 1981, this court accepted the certification.

In *State ex rel. Darian Hudson v. Milwaukee County Circuit Courts,* Case No. 81–1774–W, the defendant,

---

mitted upon a request to substitute which does not set forth any allegation why substitution is requested nor require any proof why substitution should be granted. Such a procedure should be distinguished from Wisconsin's pre-1969 law which required an affidavit alleging prejudice on the part of the judge, although no statement of factual basis and no proof of the allegation were required. Although courts and commentators have used the word "peremptory" to describe both types of substitution statutes, we use peremptory substitution to refer to statutes such as sec. 971.20.

[3] The parties now agree that sec. 345.315 is not applicable to the case at bar.

[4] There are other substitution statutes similar to sec. 971.20 (criminal proceedings) and sec. 345.315 (traffic proceedings). *See* sec. 801.58 (civil proceedings); sec. 799.205 (small claims proceedings); and sec. 48.29 (juvenile proceedings), Stats. 1979–80.

Darian Hudson, charged with burglary, filed a request for substitution pursuant to sec. 971.20, Stats. 1979–80. The circuit court for Milwaukee county, Ralph Adam Fine, circuit judge, against whom the request had been filed, ordered briefs from the parties on the constitutionality of the statute, upon its own motion. On September 18, 1981, prior to the expiration of the briefing period, the defendant petitioned the court of appeals to exercise supervisory jurisdiction over the circuit court. The defendant sought a writ of prohibition ordering Judge Fine to refrain from taking any further action in the matter. Sec. (Rule) 809.51, Stats. 1979–80. At the same time the defendant petitioned this court to bypass the court of appeals pursuant to sec. 808.05 and sec. (Rule) 809.60, Stats. 1979–80. Defendant's filing of a petition to bypass stayed the court of appeals from taking under submission defendant's petition for a supervisory writ. Sec. (Rule) 809.60(3), Stats. 1979–80. On October 6, 1981, this court granted the petition to bypass and agreed to decide defendant's petition for supervisory writ. The court also granted the state's motion to intervene. In the interim, by memorandum decision dated September 24, 1981, the circuit court for Milwaukee county declared that sec. 971.20 is "a massive and unwarranted intrusion upon and interference with the circuit court's constitutionally vested jurisdiction itself. As such it is repugnant to Article VII, sec. 2 [Wis. Const.]."[5]

---

[5] By an order dated October 6, 1981, directed to all trial judges and courts of record, the attorney general and the state public defender, this court, pursuant to its superintending and administrative powers, Art. VII, sec. 3(1), Wisconsin Constitution, required that pending disposition of the instant cases, all timely and properly filed requests for substitution of judge should be determined without consideration of the constitutionality of sec. 971.20(1), Stats. 1979–80.

Both the defendant and the state assert that sec. 971.20 is constitutional.

This court appointed counsel to represent the circuit judges.

For the reasons set forth below, we conclude that the circuit courts have the power to raise *sua sponte* the issue of the constitutionality of sec. 971.20, Stats. 1979–80, and that the circuit courts in the cases at bar exercised this power in a fair and proper manner. We further conclude that sec. 971.20 was enacted to foster fair trial and that substitution of trial judges to ensure fair trial is an aspect of the judicial system which is subject to reasonable legislative regulation. Any such legislative regulation is, however, subject to the court's authority to preserve the integrity of the judicial system and to preserve the integrity of the doctrine of separation of powers. Because it has not been proven beyond a reasonable doubt that sec. 971.20 materially impairs or practically defeats the circuit court's exercise of jurisdiction and power or the proper functioning of the judicial system, we hold that sec. 971.20, Stats. 1979–80, does not violate the doctrine of separation of powers.

I.

Before reaching the issue of the constitutionality of sec. 971.20, we must consider the defendants' challenge to the circuit courts' authority to raise the issue of the constitutionality of sec. 971.20 *sua sponte*.

The defendants' challenge is predicated on the oft-stated rule that the constitutionality of a statute can be raised only by a party whose rights are directly affected, a party who has a personal stake in the controversy. *Wirth v. Ehly,* 93 Wis. 2d 433, 448–49, 287 N.W.2d 140 (1980) ; *Mast v. Olsen,* 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979). The defendants contend that because a circuit judge has no personal interest in presiding in a specific case, *Berger v. United States,* 255 U.S. 22, 35

(1921), the judge has no standing to raise the constitutionality of sec. 971.20.

It is true that neither the circuit court nor the circuit judge is a "party" in these cases and therefore neither the circuit court nor the circuit judge has "standing" to pose the constitutional question. But the doctrine of standing is not applicable to the case at bar. The issue in the case at bar is not the circuit court's "standing" to raise a constitutional issue *sua sponte,* but rather the proper role of the circuit court during litigation.

There are two apparently inconsistent theories of the proper role of the trial (or appellate) court. One theory is that the litigants control the course of the lawsuit and determine the nature of the questions presented to the courts. The other theory is that the courts have the responsibility to decide cases in accordance with the law and this responsibility is not altered or diminished because counsel fail to identify an issue.[6] That the parties, not the courts, should determine the nature of the questions presented is a natural outgrowth of the adversary system and the heavy workload of most courts. The litigants are most familiar with the case, and courts, especially trial courts, do not have the time or staff to do original research in every case to discover issues not raised by the parties. That a court should raise issues *sua sponte* is the natural outgrowth of the court's function to do justice between the parties. Although theory and practice militate against a court's *sua sponte* raising legal issues, it is well recognized that courts may *sua*

[6] *See, Libby v. Central Wisconsin Trust Co.,* 182 Wis. 599, 602, 197 N.W. 206 (1924); *In re Courtroom,* 148 Wis. 109, 121, 134 N.W. 490 (1912); *Meyer v. Garthwaite,* 92 Wis. 571, 66 N.W. 704 (1896).

*Cf.* Tate, *Sua Sponte Consideration on Appeal,* 9 Trial Judges' J. 68 (1970); Vestal, *Sua Sponte Consideration in Appellate Review,* 27 Ford. L. Rev. 477 (1959).

*sponte* consider legal issues not raised by the parties. See, *e.g., State ex rel. State Bar v. Keller,* 16 Wis. 2d 377, 380, 114 N.W.2d 796, 116 N.W.2d 141 (1962).

Courts of course should be reluctant to consider the constitutionality of statutes unless required by the case. *Laufenberg v. Cosmetology Examining Board,* 87 Wis. 2d 175, 187, 274 N.W.2d 618 (1979). In the instant cases, however, there is adequate justification for the circuit court's raising the constitutionality of sec. 971.20 *sua sponte.* This court has said that even where the parties waive the issue, a court "should raise the [constitutional] question itself where it appears necessary to the proper disposition of a case." *State ex rel. Joint School District v. Becker,* 194 Wis. 464, 468, 215 N.W. 902 (1928). See also *Just v. Marinette County,* 56 Wis. 2d 7, 26, 201 N.W.2d 761 (1972). The constitutionality of sec. 971.20 does affect the proper disposition of the case at bar.

Furthermore, because sec. 971.20 affects the circuit court's role in the judicial system of the state, the circuit courts bringing into question the validity of the statute *sua sponte* is a valid exercise of what this court has described as the inherent and incidental powers of a circuit court. A circuit court has "inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency . . . . Circuit courts have the incidental power necessary to preserve the full and free exercise of their judicial functions, and to that end may, in appropriate cases, make *ex parte* orders without formally instituting an action to secure the desired relief." *In Re Court Room,* 148 Wis. 109, 121, 134 N.W. 490 (1912). *See also, In Re Appointment of Revisor,* 141 Wis. 592, 598, 612–13, 124 N.W. 670 (1910).

Any objection to the circuit court's raising the issue *sua sponte* on the grounds of the theoretical impropriety

of the circuit court's usurping the function of counsel or interfering with the adversary system or of the theoretical unfairness to the litigants is diminished or eliminated by the circuit court's giving the litigants notice of its consideration of the issue and an opportunity to argue the issue. In the cases at bar, before any decision was rendered, each circuit court posed the question of constitutionality to the parties and gave the parties an opportunity to present legal arguments on the issue. Each circuit court carefully considered the constitutionality of the statute and issued a written memorandum decision which carefully reviewed the legal precedents and which set forth the legal rationale for the decision.

In summary, we conclude that circuit courts have the power to raise and decide the constitutionality of a statute even though the issue was not posed by the parties and that the circuit courts in the instant cases exercised that power in a fair and proper manner. We turn now to the merits of the challenge to the constitutionality of sec. 971.20.

## II.

The sole issue on this appeal is whether sec. 971.20, Stats. 1979–80, the substitution of judge statute applicable to criminal cases, violates the state constitution. A presumption of constitutionality attends sec. 971.20 as well as every legislative enactment, and the burden of proving a statute unconstitutional beyond a reasonable doubt rests upon the party attacking the statute. *County of Portage v. Steinpreis*, 104 Wis. 2d 466, 478, 312 N.W. 2d 731 (1981).[7]

---

[7] The issue of constitutionality is one of law, and this court need not defer to the determination of the circuit court.

The circuit courts declared sec. 971.20 unconstitutional as violative of the separation of powers doctrine. Although the principle of separation of powers is not expressly stated in the Wisconsin constitution, it is implicit in the provisions vesting legislative, executive and judicial powers in three separate branches of state government. The pertinent state constitutional provisions are as follows:

"The legislative power shall be vested in a senate and assembly." Sec. 1, Art. IV, Wis. Const.

"The executive power shall be vested in a governor . . . ." Sec. 1, Art. V, Wis. Const.

"The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, such trial courts of general uniform statewide jurisdiction as the legislature may create by law and a municipal court if authorized by the legislature . . . ." Sec. 2, Art. VII, Wis. Const.

"The supreme court shall have superintending and administrative authority over all courts." Sec. 3(1), Art. VII, Wis. Const.

"The chief justice of the supreme court shall be the administrative head of the judicial system and shall exercise this administrative authority pursuant to procedures adopted by the supreme court. The chief justice may assign any judge of a court of record to aid in the proper disposition of judicial business in any court of record except the supreme court." Sec. 4(3), Art. VII, Wis. Const.

The Wisconsin constitution creates three separate coordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another. This court has recognized, however, that the constitution does not define legislative, executive or judicial power and that it is neither possible nor practicable "to classify accurately all the various gov-

ernmental powers and to say that this power belongs exclusively to one department and that power belongs exclusively to another." *Integration of Bar Case,* 244 Wis. 8, 45, 11 N.W.2d 604 (1943). There are "great borderlands of power"[8]—"twilight zone[s]"[9]—"vast stretches of ambiguous territory"[10]—in which it is difficult to determine where the functions of one branch end and those of another begin. The doctrine of separation of powers does not demand a strict, complete, absolute, scientific division of functions between the three branches of government. The separation of powers doctrine states the principle of shared, rather than completely separated powers. The doctrine envisions a government of separated branches sharing certain powers. *State ex rel. Kleczka v. Conta,* 82 Wis. 2d 679, 709–711, n. 3, 264 N.W.2d 539 (1978); *Layton School of Art & Design v. WERC,* 82 Wis. 2d 324, 347–48, 262 N.W.2d 218 (1978); *Rules of Court Case,* 204 Wis. 501, 503–4, 236 N.W. 717 (1931); *In re Appointment of Revisor,* 141 Wis. 592, 597, 124 N.W. 670 (1910). For a discussion of the doctrine of separation of powers in Wisconsin, see Currie & Resh, *The Separation of Powers—Control of Courts and Lawyers,* Dec. 1974 Wis. Bar Bull. 7; Leg. Ref. Bureau, *The Powers of the Wisconsin Supreme Court* (Res. Bull. 76–RB–1, Jan. 1976). See also *Matter of Salary of Juvenile Director,* 87 Wash. 2d 232, 552 P.2d 163, 166–172 (1976).

Regulation of substitution of judges falls within the above described vast stretches of ambiguous territory in which the functions of two branches, namely the judicial

---

[8] *In re Appointment of Revisor,* 141 Wis. 592, 597, 124 N.W. 670 (1910).

[9] *U'ren v. Bagley,* 118 Or. 77, 245 P. 1074, 1075 (1926).

[10] Frankfurter & Landis, *Power of Congress Over Procedure in Criminal Contempts in "Inferior" Federal Courts—A Study in Separation of Powers,* 37 Harv. L. Rev. 1010, 1016 (1924).

and the legislative, overlap. Both the judiciary and the legislature are empowered to ensure not only that the fairness and integrity of the courts be maintained but also that the operation of the courts be conducted in such a manner as will avoid even the suspicion of unfairness.

It is well established that this court has express, inherent, implied and incidental judicial power. Judicial power extends beyond the power to adjudicate a particular controversy and encompasses the power to regulate matters related to adjudication. The nature of the constitutional grant of judicial power has been described by this court as follows:

". . . when the people by means of the constitution established courts, they became endowed with all judicial powers essential to carry out the judicial functions delegated to them. . . . But the constitution makes no attempt to catalogue the powers granted. . . . These powers are known as incidental, implied, or inherent powers, all of which terms are used to describe those powers which must necessarily be used by the various departments of government in order that they may efficiently perform the functions imposed upon them by the people." *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385 (1929), quoted with approval in *In re Kading,* 70 Wis. 2d 508, 517, 235 N.W.2d 409, 238 N.W.2d 63, 239 N.W.2d 297 (1975).

Thus the constitution grants the supreme court power to adopt measures necessary for the due administration of justice in the state, including assuring litigants a fair trial, and to protect the courts and the judicial system against any action that would unreasonably curtail the powers or materially impair the efficacy of the courts or judicial system. Such power, properly used, is essential to the maintenance of a strong and independent judiciary, a necessary component of our system of government.

In the past, in the exercise of its judicial power this court has regulated the court's budget, court administration, the bar, and practice and procedure, has appointed counsel at public expense, has created a judicial code of ethics and has disciplined judges.[11]

[11] *State ex rel. Moran v. Dept. of Admin.*, 103 Wis. 2d 311, 316–317, 307 N.W.2d 658 (1981); *In re Kading*, 70 Wis. 2d 508, 517, 235 N.W.2d 409, 238 N.W.2d 63, 239 N.W.2d 297 (1975); *Code of Judicial Ethics*, 36 Wis. 2d 252, 254, 153 N.W.2d 873, 155 N.W.2d 565 (1967); *In re Integration of Bar*, 249 Wis. 523, 25 N.W.2d 500, 527–28 (1946); *Integration of Bar Case*, 244 Wis. 8, 40–41, 11 N.W.2d 604, 12 N.W.2d 699, 151 ALR 586 (1943); *In re Cannon*, 206 Wis. 374, 392–94, 240 N.W. 441 (1932); *State v. Cannon*, 199 Wis. 401, 402, 226 N.W. 385 (1929); *State v. Cannon*, 196 Wis. 534, 536, 221 N.W. 603 (1928); *In re Court Room*, 148 Wis. 109, 121, 134 N.W. 490 (1912); *City of Janesville v. Carpenter*, 77 Wis. 288, 302, 46 N.W. 128 (1890); *In re Janitor of Supreme Court*, 35 Wis. 410, 419 (1874); *Carpenter v. County of Dane*, 9 Wis. 274 (1859).

Counsel for the circuit judges urge this court to amend sec. 971.-20 pursuant to sec. 751.12, Stats. 1979–80. The brief of the attorney general raises the question whether sec. 971.20 is a substantive statute, not subject to this court's rule-making power under sec. 751.12. The only issue before this court is whether sec. 971.20 is unconstitutional as a violation of the separation of powers doctrine. Whether this court may, and if it may should, modify sec. 971.20 pursuant to its statutory rule-making power, sec. 751.12, Stats. 1979–80, is not a question presently before the court.

For a discussion of whether judicial substitution statutes are "substantive" or "procedural" in terms of the Alaskan constitutional provision vesting the supreme court with the authority to "make and promulgate rules governing practice and procedure in civil and criminal cases in all courts," see *Gieffels v. State*, 552 P.2d 661, 667 (Alaska 1976); *Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570, 575 (Alaska 1969); Note, *Peremptory Challenge of Judges in the Alaska Courts*, 6 UCLA-Alaska L Rev 269, 293–4 (1977).

See also Martin, *Inherent Judicial Power: Flexibility Congress Did Not Write Into The Federal Rules of Evidence*, 57 Tex. L. Rev. 167 (1980); Levin & Amsterdam, *Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision*, 107 U. Pa. L. Rev. 1 (1958); Comment, *An Inevitable Clash of Power: Determining the Proper Role of the Legislature in the Administration of Justice*, 22 S.D. L. Rev. 387 (1977).

Although the separation of powers doctrine prohibits the legislature from acting in certain spheres which are exclusively within the power of the courts, the doctrine does not necessarily prohibit the legislature from exercising its legislative public policy making powers in areas that may in some way affect the judicial branch of government. In *Integration of Bar Case,* 244 Wis. 8, 52, 11 N.W.2d 604 (1943), we stated:

"While the legislature has no constitutional power to compel the court to act or, if it acts, to act in a particular way in the discharge of the judicial function, it may nevertheless with propriety, and in the exercise of its power and the discharge of its duty, declare itself upon questions relating to the general welfare . . . . The court, as has been exemplified during the entire history of the state will respect such declaration and, as already indicated, adopt them so far as they do not embarrass the court or impair its constitutional functions."

The legislature, in obedience to its duty to promote the public interest, may enact laws to assure fair trial. *Cf. In re Cannon,* 206 Wis. 374, 381, 240 N.W. 441 (1932). The legislature may enact statutes which provide the means for assuring litigants their constitutional right to have their cases heard by an unbiased judge, and the legislature may, to effectuate the public policy of maintaining a fair judicial system and public confidence in that system, grant litigants broader rights to challenge a judge than are granted under the constitution so that litigants are assured both the actuality and appearance of a fair trial.[12]

---

[12] The right to an unbiased judge exists under the federal (Fourteenth Amendment) and state (Art. I, sec. 8) constitutional guarantees of due process but the boundaries of the constitutional right are not well defined. *State v. Knoblock,* 44 Wis. 2d 130, 134–136, 170 N.W.2d 781 (1969); *State ex rel. Mitchell v. Bowman,* 54 Wis. 2d 5, 6–7, 194 N.W.2d 297 (1972); *State v. Bell,* 62 Wis. 2d 534, 536–537, 215 N.W.2d 535 (1974); *Baldwin v. State,* 62 Wis. 2d

We therefore conclude, as have other state courts which have considered this question, that substitution of trial judges is an aspect of the judicial system which is subject to legislative regulation and that any such legislative regulation is subject to this court's authority to preserve the integrity of the judicial system and to preserve the integrity of the doctrine of separation of powers. *Solberg v. Superior Court*, 137 Cal. Rptr. 460, 561 P.2d 1148, 1154 (1977).

Indeed, Wisconsin legislative enactments on the subject of prejudice of a judge can be traced to pre-statehood years. See Statutes of the Territory of Wisconsin (1839), sec. 10–12, p. 197. See also Laws of Wisconsin (State) 1848, sec. 11, p. 22. Concerned over judicial bias and prejudice and in response to the uncertainty of the common law rules of judicial disqualification,[13] many 19th century state legislatures adopted statutes regulating disqualification of judges and substitution of judges.

The first "affidavit of prejudice" procedure in Wisconsin for substituting a judge appears in the context of

521, 530, 215 N.W.2d 541 (1974); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *In re Murchison*, 349 U.S. 133, 136 (1955); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971); *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972). Further, sec. 9, Art. I of the Wisconsin constitution provides that every person "ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." A similar Minnesota constitutional provision has been construed to include the right to trial before an unbiased judge. *Payne v. Lee*, 222 Minn. 269, 24 N.W.2d 259, 262, 264 (1946).

[13] At common law, a judge was disqualified from hearing a matter for limited reasons—direct pecuniary interest, kinship to one of the parties, and previous participation in the matter. *State ex rel. Cook v. Houser*, 122 Wis. 534, 578, 100 N.W. 964 (1904); Report, *Disqualification of Judges for Prejudice or Bias—Common Law Evolution, Current Status, and The Oregon Experience*, 48 Or. L. Rev. 311, 315–32 (1969).

a change of venue statute in the Revised Statutes of 1849,[14] and reads as follows:

[14] In addition to providing substitution of the judge on motion of the party, the Wisconsin legislature has prohibited the judge from hearing or determining an action or proceeding under certain circumstances. From 1849 until 1977, the law disqualifying the judge from acting in a case remained substantially the same. Ch. 87, sec. 20, 1849, Rev. Stats., provided as follows:

"In case the judge of the circuit court shall be interested in any cause or causes pending in such court, or shall have acted as attorney, solicitor or counsel for either of the parties thereto, the said judge shall not have power to hear and determine such cause or causes, except by consent of the parties thereto; and upon motion, the said judge shall order a change of venue to an adjoining circuit, and the judge of said circuit shall hear and determine said cause or causes."

*See McIntosh v. Bowers,* 143 Wis. 74, 76, 126 N.W. 548 (1910).

Sec. 256.19, Stats. 1975, similarly provided:

"256.19 **Judges disqualified, when.** In case any judge of any court of record shall be interested in any action or proceeding in such court or shall have acted as attorney or counsel for either of the parties thereto such judge shall not have power to hear and determine such action or proceeding or to make any order therein, except with the consent of the parties thereto."

By ch. 135, sec. 8, Laws of 1977, the legislature has dealt with disqualification of judge in a more comprehensive manner. *See* sec. 757.19, Stats. 1979–80.

The Code of Judicial Ethics deals with disqualification of a judge as follows:

"SCR 60.03 **Conflict of interest.** A judge shall not exercise his or her duties with respect to any matter in which a near relative by blood or marriage is a party, has an interest or appears as a counsel. A judge shall not participate in any matter in which he or she has a significant financial interest or in which he or she previously acted as counsel.

### "COMMENT

"This rule covers those major conflicts of interest which should automatically disqualify a judge. There will be many lesser situations in which the judge's own sense of propriety may indicate that he or she disqualify himself or herself. There may also be even lesser situations in which the judge will determine that full dis-

". . . If either party in any civil cause . . . which may be pending in any court of record in this state, shall *fear that he will not receive a fair trial* in the county in which such cause is pending, on account that the *judge is interested or prejudiced* . . . such party may apply to the court in term time, or to any judge in vacation, *by petition, setting forth the cause of the application, and praying a change of venue, accompanied by an affidavit verifying the facts of the petition stated;* and such court or judge, reasonable notice of the application having been given to the opposite party, or his attorney, shall, if satisfied of the truth of the allegations, award a change of venue to some county where the causes complained of do not exist . . . ." (Emphasis supplied.) Sec. 1, ch. 95, Rev. Stats. 1849.

The statute was construed in 1853 to require proof of actual prejudice, the truth or falsity of which was to be determined by the judge or court. *Hungerford v. Cushing*, 2 Wis. 292 (*397), 297–299 (*403–405) (1853). In 1853 the legislature effectively overturned *Hungerford* by amending the 1849 statute to eliminate proof of prejudice or judicial determination of the factual or legal basis of prejudice. The 1853 law provided that where an "affidavit" was made as provided by the 1849 statute, "it shall be the duty of the judge or court to which such application is made to award such change of venue." Laws of 1853, ch. 51, sec. 1. See also Laws of 1853, ch. 75, sec. 1, extending the affidavit of prejudice to criminal cases.

The 1853 statutory procedure for automatic substitution of a judge on the filing of an affidavit of prejudice remained the law of this state for over 100 years. Immediately prior to the 1969 enactment of sec. 971.20,

closure to counsel is adequate." *See* SCR 60.03, Code of Judicial Ethics, 36 Wis. 2d 252, 259, 153 N.W.2d 873, 155 N.W.2d 565, Rule 1 (1967).

*See also* American Bar Association Canons of Judicial Conduct, Canon 3.

Stats. 1979–80, sec. 956.03, Stats. 1967, governed the substitution of judges in criminal cases and required the filing of an affidavit of prejudice,[15] stating that the

[15] "956.03 **Change of venue or judge.** (1) PREJUDICE OF JUDGE; ANOTHER JUDGE CALLED. If the presiding judge has acted as attorney for a defendant or for the state in the pending action, *or if a defendant moves, in the manner provided in civil actions, for a change of venue on account of the prejudice of the judge, another judge shall be called in the manner provided in civil actions to try the action,* except that in county courts containing 3 or more branches the case shall be referred to the clerk who shall in accordance with the rules of said court assign the case to another branch of that court for trial or other proceedings. The time of making such motion may be extended for cause but not more than 10 days. In felony cases the motion shall be made within 20 days after his arraignment and before the case is called for trial. In misdemeanor, ordinance and traffic forfeiture cases the time for such motion shall be at arraignment or at the time the defendant demands a jury trial if one is demanded. In either case only one such motion shall be allowed and the affidavit of prejudice in any such misdemeanor or ordinance case shall not name more than one county judge." (Emphasis supplied.)

The substitution of judge statute in civil actions to which the criminal statute (sec. 956.03 above) made reference was sec. 261.08, Stats. 1967, which provided as follows:

"261.08 **Venue changed for judge's prejudice; calling other judge.** (1) *Upon the application of any party, who files his affidavit, that he has good reason to, and does believe, that he cannot have a fair trial on account of the prejudice of the judge,* naming him, the court shall request the chief justice of the supreme court or other designated justice to call some other judge to attend and hold court during the current or next term for the purpose of exercising jurisdiction in all actions and proceedings in which applications for change of the place of trial have been made for such reason. And while so in attendance said judge may make all orders and hear all applications and motions that may be brought on for hearing. If no other judge can hold court for such purpose, at either of such terms, an order changing the place of trial shall be entered on the first day of the next term. In no event, however, shall a judge against whom an affidavit of prejudice has been filed be allowed to choose the successor judge." (Emphasis supplied.)

party "has good reason to, and does believe, that he can not have a fair trial on account of the prejudice of the judge." A simple allegation to that effect, without more, was sufficient to obtain a substitution of judge.[16] It was the allegation alone, without proof that prejudice in fact existed, that permitted substitution of the judge, because the allegation imputed prejudice. *Bachmann v. City of Milwaukee,* 47 Wis. 435, 436, 2 N.W. 543 (1879).

Counsel for the circuit judges concede that the pre-1969 Wisconsin statutes relating to substitution of judges are constitutional enactments. They cite numerous cases from other jurisdictions which have upheld similar affidavit of prejudice statutes as falling within the legislature's constitutional power to enact reasonable laws to assure fair and impartial trials.[17]

[16] Once an affidavit complying with the statute was timely filed, the trial judge "ha[d] no jurisdiction to do anything but make a proper order of removal and initiate action for calling in another judge." *Dutcher v. Phoenix Insurance Co.,* 37 Wis. 2d 591, 599, 155 N.W.2d 609 (1968). *See also Luedtke v. Luedtke,* 29 Wis. 2d 567, 569, 139 N.W.2d 553 (1966); *Schwanke v. Reid,* 16 Wis. 2d 521, 524, 114 N.W.2d 845 (1962); *Woods v. Winter,* 252 Wis. 240, 247, 31 N.W.2d 504 (1948); *Wisconsin Co-operative Milk Pool v. Saylesville Cheese Manufacturing Co.,* 219 Wis. 350, 353, 263 N.W. 197 (1935); *Blumme v. Tierney,* 182 Wis. 511, 512–13, 196 N.W. 867 (1924); *Fatt v. Fatt,* 78 Wis. 633, 635, 48 N.W. 52 (1891).

[17] *See Solberg v. Superior Court,* 137 Cal. Rptr. 460, 561 P.2d 1148, 1162 (1977); *Hulme v. Woleslagel,* 208 Kan. 385, 493 P.2d 541, 551 (1972); *Channel Flying, Inc. v. Bernhardt,* 451 P.2d 570, 575 (Alaska 1969); *State ex rel. Peery v. District Court,* 145 Mont. 287, 400 P.2d 648, 660 (1965); *Johnson v. Superior Court,* 50 Cal. 2d 693, 329 P.2d 5, 8 (1958); *Moruzzi v. Federal Life and Casualty Co.,* 42 N.M. 35, 75 P.2d 320, 325 (1938); *State ex rel. Hannah v. Armijo,* 38 N.M. 73, 28 P.2d 511, 512 (1933); *State ex rel. Beach v. Fifth Judicial District Court,* 53 Nev. 444, 5 P.2d 535, 537 (1931); *U'ren v. Bagley,* 118 Or. 77, 245 P. 1074, 1077 (1926); *Barber v. State,* 197 Ind. 88, 149 N.E. 896 (1925); *State ex rel. Anaconda Copper Mining Co. v. Clancy,* 30 Mont. 529, 77 P. 312, 318 (1904); Annot., *Constitutionality of Statute Making Mere Filing of Affi-*

The crux of the challenge to the present statute by counsel for the circuit judges is that the peremptory substitution law is significantly different from the affidavit of prejudice statute and that the arguments validating the affidavit of prejudice statute do not support the validity of the peremptory substitution statute. Counsel for the circuit judges posit two arguments for striking down sec. 971.20, Stats. 1979–80: First, counsel argue that sec. 971.20 is not designed to assure fair and impartial judicial proceedings and therefore the statute does not fall within the general rule upholding substitution statutes as a valid exercise of legislative power to assure fair trial. Second, counsel argue that sec. 971.20 substantially impairs or practically defeats the exercise of the circuit courts' jurisdiction and power and the proper functioning of the judicial system. We shall consider each argument in turn.

### III.

Counsel for the circuit judges contend that sec. 971.20 does not, in contrast to its precursors, regulate substitution of trial judges for purposes of assuring litigants a fair trial.[18] They assert that the legislative purpose of sec. 971.20 is to give defense attorneys a tactical advantage, *i.e.*, an opportunity to strike a judge for any reason whatsoever. Counsel further argue that this legislative purpose cannot justify legislative interference with the functioning of the court system and accord-

davit of Bias or Prejudice Sufficient to Disqualify Judge, 46 A.L.R. 1179 (1927) ; Note, *Disqualification of Judges for Prejudice or Bias —Common Law, Evolution, Current Status and the Oregon Experience*, 48 Or. L. Rev. 311, 349, n. 209 (1969).

[18] This court has said that the legislative purpose for the affidavit of prejudice statute was to preserve "a person's right to a fair trial." *Meverden v. State*, 258 Wis. 628, 634, 46 N.W.2d 836 (1951).

ingly sec. 971.20 violates the doctrine of separation of powers.[19]

Every state appellate court which has considered a peremptory substitution statute has invalidated the statute,[20] reasoning, as do counsel for the circuit judges, that the legislature in allowing the whim, caprice, or uncontrolled power of a lawyer or litigant to determine the power of a judge to hear a case has created an unwarranted and unlawful interference with the constitutional and orderly processes of the courts. Counsel for the circuit judges urge us to adopt the reasoning set forth by the Oregon Supreme Court in distinguishing the

[19] Judge Weisel also noted in *Holmes* that sec. 971.20(1) is repugnant to Art. VII, sec. 7, which provides that circuit judges "shall be chosen by the qualified electors" of each judicial circuit. Judge Weisel concluded that sec. 971.20(1) may operate to disenfranchise the electors by permitting criminal defendants and their attorneys to prevent a duly elected judge from hearing lawfully assigned criminal cases. The statute permits the "Bar" to "make sure that a particular judge never hears any case or a particular kind of case or any criminal case as long as he sits as judge." *Holmes*, Memorandum Decision at p. 8.

We do not find this argument persuasive. When the people elect a judge, they are presumed to know that in accordance with the legislative enactments of their elected representatives in the legislature, a judge may not be permitted to sit on a case where a litigant properly exercises his right to substitution. Having elected the judge subject to that qualification on the judge's jurisdiction, they are not "disenfranchised" when the judge is removed from a case by operation of the substitution statute. *State ex rel. Knox v. Shelby Co. Superior Court*, 259 Ind. 554, 290 N.E.2d 57, 59–60 (1972).

[20] *Johnson v. Goldman*, 94 Nev. 6, 575 P.2d 929 (1978); *State ex rel. Bushman v. Vandenberg*, 203 Or. 326, 280 P.2d 344 (1955); *State ex rel. Clover Valley Lumber Co. v. Sixth Judicial District Court*, 58 Nev. 456, 83 P.2d 1031 (1938); *Austin v. Lambert*, 11 Cal. 2d 73, 77 P.2d 849, 115 ALR 849 (1938); *Daigh v. Schaffer*, 23 Cal. App. 2d 449, 73 P.2d 927 (1937). *See* Annot., *Constitutionality of Statute Which Disqualifies Judge Upon Peremptory Challenge*, 115 ALR 855 (1938).

constitutionality of the affidavit of prejudice statute from the unconstitutionality of peremptory substitution statutes, to-wit:

"[Under the peremptory substitution statute the] legislature has now invested litigants and their attorneys with the power to remove duly appointed or elected and qualified judges from the bench in particular cases at will—for good cause, bad cause, or no cause at all. It may be true that the same thing was possible under the former [affidavit of prejudice] statute, but that was only by an *abuse* of the statute, not by using it for the purposes which it was manifestly intended to accomplish. Therein lies the distinction between the two laws and the reason why [the affidavit of prejudice statute is constitutional and the peremptory substitution statute is not]." *State v. Vandenberg,* 203 Or. 326, 280 P.2d 344, 348 (1955). (Emphasis in original.)[21]

---

[21] The California Supreme Court concluded that a statute requiring an affidavit of prejudice would be valid but a peremptory substitution statute would not, reasoning as follows:

"Nothing is said in the new section about bias, prejudice, interest, or any other recognized ground for disqualification.

". . .

"It is not contended by the respondent or by those appearing in his behalf that disqualification for other causes, such as interest or relationship is not amply provided for apart from section 170.5. But it is earnestly contended that good reasons are often present which should prevent a judge from trying a particular case but that they are either not the proper subject of averment and proof or are not susceptible of proof. Mental incompetence, irascibility, arbitrariness, discourtesy to counsel, litigants, and witnesses, and other temperamental obliquity, are suggested as good cause for removing a judge from the trial of a cause, but are said to be well nigh impossible of proof sufficient to legally disqualify and that therefore the peremptory challenge is the only way of meeting the situation. It is regrettable that such causes seemed sufficiently grave to justify this legislation.

". . .

"But to put in the hands of a litigant uncontrolled power to dislodge without reason or for an undisclosed reason, an admittedly qualified judge from the trial of a case in which forsooth the **only**

We are not persuaded by these decisions because we conclude that they are based on a misconception of the purpose of the peremptory substitution statutes. The legislative objective of sec. 971.20 is the same as that of the earlier affidavit of prejudice statutes, namely, to ensure the right to a fair trial by permitting parties to strike a judge who is prejudiced or gives the appearance of being prejudiced. In sec. 971.20 the legislature merely adopted an alternative procedure to the affidavit of prejudice to accomplish its goal.

While the language of sec. 971.20, unlike that of its precursor affidavit of prejudice statutes, is silent as to bias, prejudice, interest or any other ground as justification for seeking substitution of a judge and is silent as to the objective of assuring a fair trial, the legislative history of sec. 971.20 demonstrates that the enactment was not perceived as changing the purpose or effect of the then-existing affidavit of prejudice statute. The prefatory note by the Judicial Council to ch. 255, Laws of 1969, which created sec. 971.20, makes it clear that the 1969 revision was a change in terminology and pro-

real objection to him might be that he would be fair and impartial in the trial of the case would be to characterize the statute not as a regulation but as a concealed weapon to be used to the manifest detriment of the proper conduct of the judicial department. The well-recognized limitations on legislative regulations of such matters in other jurisdictions, both state and federal, were available when section 170.5 was enacted. In none of them is the arbitrary method of administering the remedy adopted in enacting the statute under attack approved or countenanced. It must therefore be held to be an unwarranted and unlawful interference with the constitutional and orderly processes of the courts." *Austin v. Lambert,* 11 Cal. 2d 73, 77 P.2d 849, 851–853, 115 ALR 849 (1938).

At least one commentator has not been persuaded by the distinction made by courts between upholding the constitutionality of affidavit of prejudice statutes and striking down peremptory substitution laws. Note, *Peremptory Challenges of Judges in the Alaska Courts,* 6 UCLA-Alaska L. Rev. 269, 291–93 (1977).

cedure, not a change in substance or in statutory purpose. The Note states as follows:

"While not changing the practical effect of the present affidavit of prejudice law, the bill provides for the 'substitution of a judge' upon the written request of the defendant. It is felt that most affidavits of prejudice are not truly that in present practice and it is more realistic to call them by what they really are, a request for another judge to hear the particular case."

There is however another Judicial Council Note to sec. 971.20, which appears in 42A Wis. Stats. Annot., sec. 971.20, at p. 226 (West 1971), upon which counsel for the circuit judges rely to argue that the purpose of sec. 971.20 is to give defense counsel a tactical advantage, not to assure fair trials. This Judicial Council's Note to sec. 971.20 comments as follows:

"This [sec. 971.20] is new terminology replacing former s. 956.03(1). 'Affidavit of Prejudice' has normally not meant prejudice since most defendants have no knowledge of the judge and have filed the affidavit solely for tactical purposes usually on an attorney's advice. This terminology is felt to be more accurate."

Counsel for the circuit judges have, and not without some justification, focused on the use of the phrase "tactical purposes" used by the Judicial Council. The phrase "tactical purposes," however, must be read in the context of both Notes and in the context of the purpose of and practice under the former affidavit of prejudice statutes.

It is clear from the above-quoted Notes of the Judicial Council and from our prior cases that the affidavit of prejudice statutes had created problems for counsel and the judicial system. Because counsel did not have to set forth the facts giving rise to good reason for the defendant to believe "that he can not have a fair trial on account of the prejudice of the judge" and because no

court reviewed the sufficiency of the factual premises of the affidavits, no law was developing in this state to guide the lawyers as to the propriety of filing affidavits. In filing the affidavits, lawyers did not know precisely what constituted "prejudice of the judge" under the statute which would justify a belief that the client could not have a "fair trial". The phrase "prejudice of the judge" in the affidavit of prejudice statute could be interpreted in the traditional narrow sense that the judge had a direct and substantial financial or personal connection with the matter. Or the phrase could be interpreted more broadly to encompass many types of connections the judge may have with the matter that may actually prejudice the judge or may give the appearance that the party may not get a fair and impartial hearing.[22]

[22] As the American Bar Association Project on Standards for Criminal Justice commented, "Some situations requiring recusation are obvious, such as those involving relationships of consanguinity or affinity . . . More subtle and more difficult of resolution are those cases in which the connection between the judge and other participants is remote and tenuous." Standards Relating to the Function of the Trial Judge commentary to sec. 1.7 entitled Circumstances Requiring Recusation, p. 35 (1972).

For a discussion of prejudice as grounds for recusal and substitution of and of the various procedures for substitution of judges, *see Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 467 (1952) (Frankfurter, J., "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact"); *Berger v. United States*, 255 U.S. 22 (1921); *Deal v. Warner*, 369 F. Supp. 174 (W.D. Mo. 1973); *McLaughlin v. Venore Transportation Co.*, 244 F. Supp. 802 (D Mass. 1965); *Wiedemann v. Wiedemann*, 228 Minn. 177, 36 N.W.2d 810, 812 (1949); American Bar Association Standards, *The Function of The Trial Judge,* sec. 1.7 (1972); Frank, *Disqualification of Judges: In Support of the Bayh Bill*, 35 Law & Contemp. Problems 43 (1970); Frank, *Disqualification of Judges*, 56 Yale L. J. 605 (1947); Getto, *Peremptory Disqualification of the Trial Judge*, 1 Litigation 22 (1975); Orfield, *Recusation of Federal Judges*, 17 Buffalo L. Rev. 799 (1968); Report, *Disqualification of Judges for*

When viewed from this historical perspective, the words "tactical purposes" used in the Judicial Council Note do not take on the connotations attributed to them by counsel for the circuit court judges. The words "tactical purposes" allude to the broad interpretation of "prejudice of the judge." Although the Judicial Council Notes may be inartfully drafted, it is clear that the legislative intent in adopting sec. 971.20 was to give the defendant an opportunity to object to a judge in whose fairness the defendant lacks confidence. Just as the disqualification of a judge perceived to be prejudiced promotes the appearance of a fair trial, the substitution of a judge perceived to be arbitrary, incompetent, irascible, discourteous to counsel, defendant, or witnesses, or unfavorably disposed to the defendant, the attorney or the issues to be tried, may promote the appearance of a fair trial. We conclude, as we did in prior cases, that the objective of the peremptory substitution statute and of the pre-1969 affidavit of prejudice law is the same: to preserve the defendant's right to a fair trial

*Prejudice or Bias—Common Law Evolution, Current Status, and The Oregon Experience,* 48 Or. L. Rev. 311 (1969); Note, *Peremptory Challenges of Judges: The Arizona Experience,* 1973 Law and Soc. Order 95, 101; Note, *Disqualification of Federal Judges for Bias Under 28 U.S.C. Section 144 and Revised Section 455,* 45 Fordham L. Rev. 139 (1976); Note, *Disqualification of Judges and Justices in the Federal Courts,* 86 Harv. L. Rev. 736 (1973); Note, *Disqualification of Judges for Bias in the Federal Courts,* 79 Harv. L. Rev. 1435 (1966); Note, *Disqualification of a Judge on the Ground of Bias,* 41 Harv. L. Rev. 78 (1927); Note, *State Procedures for Disqualification of Judges for Bias and Prejudice,* 42 N.Y.U. L. Rev. 484 (1967); Note, *Disqualification of Federal District Judges—Problems and Proposals,* 7 Seton Hall L. Rev. 612 (1976); Comment, *Disqualification for Interest of Lower Federal Court Judges: 28 U.S.C. Section 455,* 71 Mich. L. Rev. 538 (1973); Comment, *Disqualification of Federal Judges for Bias or Prejudice,* 46 U. Chi. L. Rev. 236 (1978); Comment, *Disqualifying Federal District Judges Without Cause,* 50 Wash. L. Rev. 109 (1974).

and to ensure the orderly administration of justice. *State v. Bell,* 62 Wis. 2d 534, 537, 215 N.W.2d 535 (1974) ; *Baldwin v. State,* 62 Wis. 2d 521, 532, 215 N.W. 2d 541 (1974). See also *State v. Smith,* 103 Wis. 2d 361, 363–64, 309 N.W.2d 7 (Ct. App. 1981). The legislature's elimination of the requirement of an affidavit of prejudice in 1969 is merely a change in the method of accomplishing the legitimate legislative objective of assuring fair trial, not a change of objective.

We acknowledge that sec. 971.20 gives defendants the opportunity to invoke the statute for reasons not related to the goal of preserving fair trial or the appearance of fair trial. Be that as it may, the affidavit of prejudice was also subject to abuse.[23] That sec. 971.20 can be abused does not mean that fostering the abuse was the legislative purpose.[24]

---

[23] In *Dutcher v. Phoenix Insurance Co.,* 37 Wis. 2d 591, 599–600, 155 N.W.2d 609 (1968), this court commented as follows: "Furthermore it is patently apparent that the affidavit in this case was filed for purposes of delay. While this is not a ground for denial of a change of venue or trial judge, it is a procedure which cannot be approved."

[24] There are a number of restraints on the abuse of the affidavit of prejudice or peremptory substitution statutes. Already present in sec. 971.20 are limitations as to time for filing requests and the number of requests which can be filed. *See Solberg v. Superior Court,* 137 Cal. Rptr. 460, 561 P.2d 1148, 1157 (1977) ; *State ex rel. Hannah v. Armijo,* 38 N.M. 73, 28 P.2d 511, 514 (1933). *See also* Note, *Peremptory Challenges of Judges: The Arizona Experience,* 1973 Law and Soc. Order 95, 101. Sec. 802.05, Stats. 1979–80, forestalls use of peremptory substitution for purposes of delay. Sec. 802.05, Stats. 1979–80, is applicable by virtue of sec. 972.11, Stats. 1979–80, to all papers filed in criminal actions, including a substitution request under sec. 971.20. Sec. 802.05 provides as follows: "The signature of an attorney [on a paper] constitutes a certificate that . . . it is not interposed for delay."

Beyond the statutes themselves, there are practical considerations which limit the abuse of sec. 971.20 and the affidavit of prejudice. In single-judge circuits an attorney will be restrained to file a substitution request only for cause, because that attorney

The legislative purpose in adopting sec. 971.20 was to remedy the ills caused by the affidavit of prejudice statute. Because the Wisconsin affidavit of prejudice statutes required no substantiation of or determination of the allegation of prejudice, many thought the procedure unjustly impugned the integrity of the judges to whom the affidavits were addressed and that the unchallenged and undetermined charges of judicial prejudice spread on the court records gave the public a distorted picture of judicial impartiality. Some would have preferred, instead of sec. 971.20, that the legislature require the litigant to make a prima facie showing of prejudice and the trial judge (whether the judge to whom the affidavit is addressed or another judge) to rule on the sufficiency of the showing.[25] Such a procedure can be viewed as

must practice before that judge on numerous occasions. In single-judge and multi-judge circuits, an unwarranted substitution request brings the risk that the next judge may be unsatisfactory and that the attorney will antagonize the judges before whom the attorney practices frequently. *See Solberg v. Superior Court*, 561 P.2d at 1157.

Further, as the amicus curiae brief of the State Bar of Wisconsin and the Litigation Section of the State Bar of Wisconsin make clear, disciplinary actions are still available to be used against attorneys who abuse the statute.

[25] Some judges and writers have characterized this procedure as the federal system, but it probably is not the way the majority of the federal courts interpret the federal statutes.

There are two basic federal statutes concerning disqualification and substitution of judges. The first, 28 U.S.C. 455, provides that a judge shall disqualify himself or herself when the judge has a personal bias or prejudice toward a party or the party's cause. The second, 28 U.S.C. 144, provides the procedure by which a party can challenge a judge. Section 144 requires the filing of an affidavit which states the factual basis for the affiant's belief that the judge before whom a matter is pending is biased or prejudiced. Professors Wright and Miller state that sec. 144 has not worked well, primarily because the term prejudice has been narrowly construed. 13 *Federal Practice and Procedure*, sec. 3542 at 345–46 (1975). Additionally, the affidavit requirement has also been

too cumbersome, too time consuming and too expensive. In weighing the merits of the alternative approaches to substitution, the legislature obviously concluded that sec. 971.20, which limits the number of substitutions and limits the time for requesting substitution, on balance is a commendable procedure to protect the defendant's right to a fair trial, to protect the judge from having his or her impartiality unfairly impugned, to avoid having the lawyer file an affidavit of prejudice without having guidelines as to the proper use of the affidavit, and to promote the bench's and public's interest in preserving confidence in the judiciary.[26]

strictly interpreted. They state "On its face the statute might seem to contemplate automatic disqualification. It has not been read this way." *Id.*, sec. 3551, at 374. In contrast to the pre-1969 Wisconsin affidavit of prejudice statute, under the federal law the facts contained within the affidavit must be legally sufficient (the facts stated must be accepted as true), and the judge who is the object of the affidavit passes on sufficiency. There are, however, cases in which the judge referred to in the affidavit has forwarded the affidavit along to the chief judge of the district to determine sufficiency. *Id.* at 375.

[26] Wisconsin judges who have considered various substitution proposals have come forward with different recommendations. Justice Coffey suggested the Wisconsin legislature abandon the concept of judicial substitution as a matter of right and provide for disqualification only for cause with the motion being heard and decided by a judge other than the judge named in the affidavit. *State ex rel. Tarney v. McCormack*, 99 Wis. 2d 220, 239–40, 298 N.W.2d 552 (1980).

Judge Weisel in *Holmes* suggested that the state follow the federal rule which he interpreted as requiring an affidavit which must specifically set forth facts that form the basis of the belief that bias or prejudice exists and a determination of the sufficiency of the affidavit without a hearing by a judge other than the one to whom the affidavit was addressed. *Holmes* Memorandum Decision at p. 15.

Judge Fine in *Hudson* would require the defendant in the case at bar to file an affidavit specifying grounds for substitution. If Judge Fine determines that the affidavit is legally sufficient on its

While the substitution statute results in potentially productive hours of a judge's time being expended in travel to hear a case in another county miles away and in higher costs to the state to operate the judicial system, the legislature evidently decided that the inefficiencies, inconveniences and higher costs caused by peremptory substitution are an acceptable price to be paid for the benefits to be derived from peremptory substitution. Nonetheless the legislature must understand that the peremptory substitution statute is another example of a statutorily imposed increased expense in the operation of the judicial system over which the court has no control. These increased costs which are beyond the control of this court take on special import in this era of fiscal economy when this court is asked to decrease the judicial budget and to control expenditures.

While there is continuing dispute about the wisdom of peremptory substitution laws generally, and of the specific terms of sec. 971.20,[27] there is also continuing disagreement about the prudence of affidavit of prejudice

face, he will recuse himself. If he does not recuse himself, the affidavit would be referred to the chief judge. *Hudson* Memorandum Decision at p. 19.

*See also* Justice Callow's comments in *State ex rel. Warrington v. Circuit Court for Shawano County,* 100 Wis. 2d 726, 738, 303 N.W.2d 590 (1981).

[27] There are several bills pending in the legislature. 1981 Senate Bill 163, prepared by the Judicial Council, would limit a defendant's right to substitution in an attempt to resolve some of the very problems the circuit courts have noted. The note to the bill states in part:

"NOTE: Section 971.20 has been revised to clarify its objective of allowing defendants in criminal trials one substitution of the assigned judge upon making a timely request. The statute is not to be used for delay nor for 'judge shopping,' but is to ensure a fair and impartial trial for the defendants."

Other bills pending on the substitution statute are 1981 Senate Bill 12; 1981 Senate Bill 48; 1981 Assembly Bill 90; and 1981 Assembly Bill 218.

statutes and of the federal system of substitution.[28] In any event, peremptory substitution is well recognized as a legitimate means to accomplish the objective of assuring fair trials.

Seven state supreme courts have promulgated rules similar to sec. 971.20.[29] Several of these courts have said that the peremptory substitution rule is to protect the right to a fair trial before an impartial judge and that if there are abuses by counsel in peremptory sub-

---

[28] In August 1979, the American Bar Association approved a resolution calling for federal legislation or an amendment to the Federal Rules of Criminal Procedure to provide for peremptory challenge of a trial judge under specified conditions. *See* 1 ABA Standards for Criminal Justice, ch. 6, Special Functions of the Trial Judge, Standard 6–1.7, pp. 6–19 – 6–21 (2d ed. 1980).

[29] *Alaska:* Rule 25(d), Alaska R. Crim. P. *See Halligan v. State,* 624 P.2d 281, 281 n. 2 (Alaska 1981); *Gieffels v. State,* 552 P.2d 661 (Alaska 1976).

*Arizona:* Rule 10.2, Arizona R. Crim. P.

*Idaho:* Rule 40(d)1, Idaho R. Civ. P.

*Indiana:* Rule 12, Indiana R. Crim. P. *See State ex rel. Benjamin v. Criminal Court of Marion County,* 264 Ind. 191, 341 N.E.2d 495 (1976); *Briscoe v. State,* 388 N.E.2d 638 (Ind. Ct. App. 1979).

*Missouri:* Rule 51.05, Mo. R. Civ. P. *See Natural Bridge Devel. Co. v. St. Louis County Water Co.,* 563 S.W.2d 522, 525 (Mo. Ct. App. 1978).

*Montana:* Mont. Ct. Rule No. 3–1–801. *See State ex rel. Greely v. District Court,* 590 P.2d 1104, 1108 (Mont. 1979).

*Wyoming:* Wyoming R. Crim. P. 23.

Counsel for the circuit courts did a 50-state study and conclude that in 22 states there is no statute or rule on substitution of judge by a party, in 15 states and the federal system, the legislature has enacted statutes on substitution of judge by a party, and in 13 states the supreme court has adopted rules on substitution of judge by a party.

North Dakota has a modified peremptory substitution statute. The request for change of judge must be accompanied by a statement that the request is made in good faith and not for the purpose of delay. N.D. Cent. Code Annot. sec. 29–15–21 (1974).

Minnesota has a peremptory substitution statute. Minn. Stats. Annot. sec. 487.40 (West Supp. 1981).

stitutions, the abuses should be corrected by amendments to the rule, not by abandoning the concept of peremptory substitution. The Montana Supreme Court summarized this view as follows:

> "The purpose of the rule is to guarantee both the prosecution and the defendant a fair trial before an impartial district judge . . . .
> "We recognize that the right of peremptory disqualification of district judges creates delays in the trial of both criminal and civil cases in Montana. It causes calendaring and scheduling problems for district judges, the parties and their attorneys. It interferes with the normal and routine operation of the district courts. Nonetheless we hold that the paramount and overriding consideration is the right to a fair trial before any impartial district judge. We consider that improvements in the present system lie in the area of correction of abuses in the exercise of peremptory disqualifications rather than elimination of the right." *State ex rel. Greely v. Dist. Ct. of 4th Jud. Dist.*, 590 P.2d 1104, 1108 (Mont. 1979).

Our conclusion that the Wisconsin peremptory substitution statute is a well-recognized means to ensure a fair trial is corroborated by the recommendations of the National Conference of the Commissioners on Uniform State Laws and the American Bar Association Commission on Standards of Judicial Administration. Rule 741 (a) of the Uniform Rules of Criminal Procedure, 10 Uniform Laws Annotated Rule 741, pp. 354–357 (1974), allows a defendant to obtain substitution of a judge upon timely demand.[30]

---

[30] Rule 741 provides as follows:

"Rule 741. [**Substitution of Judge.**]

"(a) *On demand.* A defendant may obtain a substitution of the judge before whom a trial or other proceeding is to be conducted by filing a demand therefor, but if trial has commenced before a judge no demand may be filed as to him. A defendant may not file more than one demand in a case. If there are two or more defendants, a defendant may not file a demand, if another defendant

Although ABA Standard 2.32 in Standards Relating to Trial Courts (1976) provides for disqualification of a judge upon motion to disqualify for cause, with the judge against whom a motion was filed determining whether the motion was legally sufficient on its face and with another judge resolving factual issues raised by the motion,[31] the Commission recommended that considera-

has filed a demand, unless a motion for severance of defendants has been denied. The demand shall be signed by the defendant or his counsel, and shall be filed at least [ten days] before the time set for commencement of trial and at least [three days] before the time set for any other proceeding, but it may be filed within [one day] after the defendant ascertains or should have ascertained the judge who is to preside at the trial or proceeding.

"(b) *On own motion.* A judge on his own motion may disqualify himself from presiding over a trial or other proceeding.

"(c) *For cause.* A judge may not preside over a trial or other proceeding if upon motion of a party it appears that he is disqualified for a cause provided [by law or by the Code of Judicial Conduct]. The motion to disqualify shall be heard before another judge regularly sitting in the same court or a judge designated by [the appropriate assigning authority], and, unless otherwise ordered by that judge for cause, shall be made at least [ten days] before the time set for commencement of trial and at least [three days] before the time set for any other proceeding, but it may be made within [one day] after the party ascertains or should have ascertained the judge who is to preside at the trial or proceeding.

"(d) *Designation of substitute judge.* Upon the filing of a demand under subdivision (a) or disqualification under subdivision (b) or (c) the judge shall take no further action in the case, except to prescribe terms or conditions of release if requested to do so by the defendant, and [the appropriate assigning authority] shall designate another judge.

"(e) *Disability during trial. . . .*

"(f) *Disability after verdict or finding of guilty. . . .*"

[31] Standard 2.32 provides as follows:

"2.32 **Disqualification of Judges.** A judge should be subject to disqualification for cause on the grounds set forth in the Code of Judicial Conduct recommended by the American Bar Association. A judge against whom a motion to disqualify for cause is made may be authorized to determine whether it is legally sufficient on its face, but factual issues raised by the motion should be heard and resolved by another judge."

tion be given to adopting a peremptory substitution procedure similar to sec. 971.20. The Commission explained that the theory of peremptory substitution is that a party should be able to refrain from having his case heard by a judge who, though not disqualified for cause on the grounds set forth in the ABA Code of Judicial Conduct, the party believes will not grant him a fair trial. The Commission went on to explain that it viewed the concept of peremptory substitution as one recognized by implication in the "affidavit of prejudice" laws which, according to the Commission, evidence a deeply felt need for enlarging the basis upon which a party may object to a judge. The peremptory substitution is a formal recognition of this deeply felt need to allow a party to avoid, in a manner consonant with the sound administration of a court's work, a judge in whose fairness or understanding the party lacks confidence and thus to provide additional assurance to the parties that their case will be determined justly. The Commission urged adoption of peremptory substitution commenting as follows:

". . . Consideration should be given to adopting a procedure for peremptory challenge of a judge. The theory of such a procedure is that a party should be able to avoid having his case tried by a judge who, though he is not disqualified for cause, the party believes cannot afford him a fair trial. Such a belief may stem from the judge's views or practices regarding the type of case in question, from the judge's inexperience with the type of matter involved, or from previous interchanges between the judge and the party or his counsel. One or more of these considerations may weigh heavily where the disposition of the matter involves a broad range of unreviewable discretion on the part of the judge or where the trial of a matter is likely to be long or complicated. Although a party is not entitled to have his case heard by a judge of his selection, he should not be compelled to accept a judge in whose fairness or understanding he

lacks confidence if that can be avoided without interfering with administration of the court's work.

"The concept of peremptory challenge of a judge, similar to that established with respect to jurors, is recognized by implication in jurisdictions where a challenge based on cause is given effect without requiring substantiation of its allegations. This practice unjustifiably impugns the integrity of the judge to whom such a challenge is addressed and perverts the procedure of recusal for cause. Nevertheless, it evidences a deeply felt need for enlarging the basis upon which a party may object to a judge. If the procedure for peremptory challenge of a judge is formally recognized as such, it can provide an additional measure of assurance to the parties that their case will be justly determined. Experience in jurisdictions having the peremptory challenge procedure indicates that, when subject to proper controls and limitations it can provide this assurance without burdensome additional cost or complications in trial court administration.

"A procedure for peremptory challenge of a judge should have provisions for prompt assignment of another judge to replace one who has been challenged. Such provisions are of especial importance where a challenge has been made in a matter requiring immediate judicial action, such as an application for a temporary injunction. In judicial districts having only one or two judges, adoption of the peremptory challenge procedures may be impractical unless there are also administrative arrangements whereby a replacement judge can be assigned from elsewhere." Sec. 2.32, Commentary, pp. 51–53.

We acknowledge that sec. 971.20 can be abused and can result in litigants and lawyers delaying judicial proceedings and arbitrarily interfering with judicial proceedings. As discussed more fully later, the sincerity of the circuit judges' concern that sec. 971.20 will be used by the bar to isolate a particular judge and to interfere with the independence of the judiciary is not questioned. That the wisdom of sec. 971.20 is being seriously chal-

lenged and that there is dissatisfaction with the operation of sec. 971.20 is clear from the number of bills presented to the legislature to modify sec. 971.20. Although the legislature may on reconsideration decide that sec. 971.20 or some of its terms do not represent the best balance of the defendant's right to a fair trial and the efficient operation of the judicial system, this court cannot conclude that sec. 971.20 is an unconstitutional exercise of legislative power to ensure fair trials.

## IV.

Although the legislature is not prohibited by the doctrine of separation of powers from enacting reasonable laws regulating substitution of judges to assure a fair trial and the appearance of a fair trial, the doctrine of separation of powers does impose significant limitations on the legislature's exercise of its power. Under the doctrine of separation of powers, the legislature is prohibited from unduly burdening or substantially interfering with the judicial branch.[32]

In addition, we are cognizant that the constitution mandates that this court have "superintending and administrative authority over all courts," sec. 3(1) and sec. 4(3), Art. VII, Wis. Const., and that legislative enactments which do not unduly burden or substantially interfere with the judicial branch may nevertheless unconstitutionally interfere with this court's superintending and administrative authority.

In *Integration of Bar Case,* 244 Wis. 8, 49, 11 N.W.2d 604, 12 N.W.2d 699 (1943), this court spelled out the

---

[32] For a similar expression of the constitutional limitation on legislative power, *see Hustedt v. Workers' Compensation Appeals Board,* 30 Cal. 3d 329, 178 Cal. Rptr. 801, 636 P.2d 1139 (1981); *Solberg v. Superior Court,* 19 Cal. 3d 182, 137 Cal. Rptr. 460, 561 P.2d 1148, 1154 (1977); *Gieffels v. State,* 552 P.2d 661, 667, n. 5 (Alaska 1976); *State ex rel. Bushman v. Vandenberg,* 203 Or. 326, 280 P.2d 344, 347 (1935).

circumstances under which legislative regulation constitutes an unconstitutional infringement on the judiciary as follows: When "the exercise of administrative and legislative power ha[s] so far invaded the judicial field as to embarrass the court and impair its proper functioning," the court will be "compelled to maintain its integrity as a constitutional institution."

Using slightly different language, in *John F. Jelke Co. v. Beck,* 208 Wis. 650, 660, 242 N.W. 576 (1932), this court set forth the limitation on the legislative power as follows:

"In Wisconsin jurisdiction and power of the court is conferred not by act of the legislature but by the constitution itself. *While the legislature may regulate in the public interest the exercise of the judicial power, it cannot, under the guise of regulation, withdraw that power or so limit and circumscribe it as to defeat the constitutional purpose.*"

Accordingly the question becomes whether the operation of sec. 971.20, including defendants' possible abuse of the right of substitution for purposes unrelated to securing a fair trial, materially impairs or practically defeats the circuit court's exercise of jurisdiction and power or the proper functioning of the judicial system so as to constitute a violation of the doctrine of separation of powers. The state contends, and we agree, that there has been no showing, beyond a reasonable doubt, that sec. 971.20, Stats., so affects the operation of the judicial system.

There is no showing that the peremptory substitution statute defeats the circuit courts' exercise of judicial power. Sec. 971.20 leaves intact the *circuit court's* judicial power to deal with the case, although the substitution request does stop a particular *circuit judge* from exercising his or her authority to hear the particular

case. As the California Supreme Court said regarding California's affidavit of prejudice statute:

". . . The effect of the statute here challenged is at most to remove the individual *judge* assigned to the case or the department, but not to deprive the *court* of the power to hear such cases by assignment of another judge." *Solberg v. Superior Court,* 561 P.2d at 1161 n. 22 (emphasis in original).

*See also U'ren v. Bagley,* 118 Or. 77, 245 P. 1074, 1076 (1926).

Although the test "material impairment or practical defeat of the proper functioning of the judicial system" is not without ambiguity, we conclude that it has not been proven beyond a reasonable doubt that the peremptory substitution statute materially impairs or practically defeats the proper functioning of the judicial system. The state asks this court to take judicial notice of figures supplied by the Office of the Director of State Courts estimating the number of requests for substitution filed in 1981. See sec. 902.01(2), Stats. 1979–80, and sec. 902.01(4), Stats. 1979–80. While statistics do not tell the whole story, they may cast some light on the impact the substitution of judge statute has on the judicial system in Wisconsin. The Office of the Director of State Courts reports that between January 1, 1981 and March 31, 1981, approximately 71,400 cases were filed, 11,112 criminal and 60,288 civil, and that 1224 substitution requests were filed, 496 in criminal matters, and 728 in civil matters. On the basis of these figures for the first quarter, we estimate that about 4,900 substitution requests were filed in 1981 in a total of 286,000 case filings. Thus substitution requests were probably filed in 1981 in less than 2 percent of the cases overall and in less than 5 percent of the criminal cases. When viewed from the perspective of the number of judges who must be replaced, the statistics indicate that substitutions may

have an impact on the operation of the judicial system. Considered in terms of percentages of total cases, the substitution requests do not seem to play a role in the operation of the judicial system of this state. Whether the requests for substitution have a significant impact or play a significant role is not known and whether they materially impair the operation of the judicial system has not been proved. These statistics do not provide quantitative evidence from which we can conclude that substitution requests materially impair or practically defeat the ability of the judicial system to dispose of the cases presented.

Nevertheless the circuit courts determined that sec. 971.20 has adverse effects on the administration of justice which, beyond a reasonable doubt, justify holding the statute unconstitutional.

The circuit courts decided that peremptory substitution of judges causes delay in the disposition of cases. See *Holmes* memorandum decision at 9; *Hudson* memorandum decision at 18. Although there are no hard statistical data on delay, common sense tells us that a request for substitution is likely to cause delay in the disposition of the case and that the chances for delay are greater in single-judge circuits than in multi-judge circuits. The circuit judges of this state who deal with substitution requests on a daily basis perceive substitution requests to be a major source of delay in our court system. See Resource Planning Corporation for the State of Wisconsin Judicial Planning Committee, Wisconsin Case Processing Study Final Report (July 1, 1978), p. 478, discussed in Justice Coffey's concurring opinion in *State ex rel. Tarney v. McCormack*, 99 Wis. 2d 220, 238 n. 2, 298 N.W.2d 552 (1980).

We note that the legislature has attempted to keep delay to the minimum to assure "the efficient adminis-

tration of court calendaring" by circumscribing the time within which a request for a substitution of the judge may be made. *State v. Bell,* 62 Wis. 2d 534, 537, 215 N.W.2d 535 (1974). See also *State v. Smith,* 103 Wis. 2d 361, 364, 309 N.W.2d 7 (Ct. App. 1981). Whether the costs of delay outweigh, or are outweighed by, the beneficial aspects of the statute is not before us in these cases. The legislature's balancing of these factors will be accepted unless the statute practically defeats the exercise of the judicial power or materially impairs the operation of the judicial system. On the basis of the record before us we cannot find beyond a reasonable doubt that the delay caused by the peremptory substitution of judges is so great as to materially impair or practically defeat the criminal justice system.

The circuit courts found that peremptory substitution produces inefficiencies and inconveniences and increases the state's costs in the disposition of cases. See *Holmes* memorandum decision at 9; *Hudson* memorandum decision at 13–14.

Again, common sense tells us that a peremptory substitution law does cause inefficiencies, inconveniences and increased expenses and that these effects will be greater in single-judge circuits than in multi-judge circuits. Nevertheless, those cases in which substitution requests have been filed are being heard and disposed of, even though perhaps in some cases not as efficiently or conveniently or at minimum cost as they might be were there a more restrictive substitution procedure.

Finally, the circuit courts concluded that peremptory substitution of judges allows a litigant to remove a judge whom he or she perceives as handling and disposing of cases in a manner unfavorable to the interests of the litigant and that such abuse of the right to a fair trial permits judge shopping (*Holmes* memorandum decision

at 9, *Hudson* memorandum decision at 18),[33] provides criminal defendants with "a mechanism for avoiding judges perceived as tough sentencers" (*Hudson* memorandum decision at 16), gives the bar "power to control the Court" (*Holmes* memorandum decision at 8), and undermines innovative attempts at discipline and reform of the judicial system (*Holmes* memorandum decision at 8).

These criticisms of the peremptory substitution statute cannot be measured by figures and statistics. These criticisms reflect the subtle effects of sec. 971.20: the disruption of the orderly conduct of judicial business, the demoralization of court dockets, and the threat to judicial independence. Judge Weisel in his memorandum decision in *Holmes* eloquently expressed these concerns as follows:

"None of the decisions cited [from other jurisdictions invalidating peremptory substitution statutes] have touched upon the subtle and unconscious effect that these statutes have upon the trial judge. Perhaps it is because they were written by appellate judges. Under these statutes a judge lives knowing, perhaps not caring, that at any time the Bar can exercise its potential power and literally force out that judge of ever trying another case in the county in which he has been elected as circuit judge. Like it or not, deny it if you will, the Bar under these statutes has that power. . . . No judge will admit to being influenced by it. No judge honest with himself will deny that he is not bothered by it.

"Should we, as an independent judiciary, have to live under that cloud? There is a subtle threat to conform to the Bar's standards of practice. The judge who deviates from that norm set by the local Bar is faced with re-

[33] If "judge-shopping" means judge selection, sec. 971.20 does not permit judge shopping. The statute simply gives a litigant the power to disqualify a judge. The statute does not allow a litigant to select the judge who shall hear the case. Note, *Peremptory Substitution of Judges: The Arizona Experience,* 1973 Law and Soc. Order 95, 104–05.

peated requests for substitution. He is then under a subtle force, or at least incurs the displeasure of the Court Administrator's office and from the Bar. We are exposed to this power every day. It cannot help but have a stifling effect upon the innovation of court procedures, and attempts by the court to solve the problem. The result is the loss of the independence of the judiciary. It stifles the court's attempts at discipline, at reform, at efficiency which is met not by cooperation from the local Bar which has traditionally resisted change, but by antagonism and the subsequent requests for substitution of judge. The judge is faced with situations where he cannot fulfill his oath of office because he is prevented from doing so by the whim and caprice of counsel." Memorandum Decision at 8.

This court is not unmindful of the concerns expressed by Judge Weisel. On two recent occasions members of this court have expressed concern over the potential abuse of sec. 971.20 and have urged the legislature to correct the defects in the statute. *See State ex rel. Warrington v. Circuit Court for Shawano County,* 100 Wis. 2d 726, 738–39, 303 N.W.2d 590 (1981) (Justice Callow concurring) ; *State ex rel. Tarney v. McCormack,* 99 Wis. 2d 220, 236–40, 298 N.W.2d 552 (1980) (Justice Coffey concurring). And there is reason to believe that the legislature is sensitive to the inefficiencies and difficulties which exist in the operation of the existing substitution statutes and is ready and willing to modify sec. 971.20 to remove such undesirable features as it can consistent with its goal of securing both the fact of and appearance of fairness in judicial proceedings.

Regardless of each individual justice's view of the wisdom of sec. 971.20, and we are not all of one mind, we are unanimous in concluding that the statute does not violate the constitutional doctrine of separation of powers. We therefore reverse the order of the circuit court for Polk county. We order that a writ of prohibition issue directing the circuit court for Milwaukee county,

Ralph Adam Fine, circuit judge, to refrain from taking any further action in the above-captioned matter. And we remand the causes to the respective circuit courts for further proceedings not inconsistent with this opinion.

*By the Court.*—The order of the circuit court for Polk county is reversed; a writ of prohibition is issued directing the circuit court for Milwaukee county, Ralph Adam Fine, circuit judge, to refrain from taking any further action in the above-captioned matter; and the causes are remanded to the respective circuit courts for proceedings not inconsistent with this opinion.

COFFEY, J. *(concurring)*. I concur in the opinion of the court because I believe that it has not been proved beyond a reasonable doubt that sec. 971.20, Stats., so materially impairs the circuit court's function as to constitute a violation of the doctrine of separation of powers. I write separately, however, to emphasize that the Wis. Const. art. VII, sec. 3(1) specifically vests in the supreme court the "superintending and administrative authority over all courts." The rationale for vesting the administrative authority in the judiciary has been aptly summarized by one court in the following manner.

"The right to control its order of business and to so conduct the same that the rights of all litigants may properly be safeguarded has always been recognized as inherent in courts, and to strip them of that authority would necessarily render them so impotent and useless as to leave little excuse for their existence and place in the hands of the legislative branch of the state, power and control never contemplated by the Constitution." *Atchison, Topeka and Santa Fe Ry. Co. v. Long,* 122 Okl. 86, 251 P. 486, 489 (1926).

Because the administrative and superintending authority over the courts has been constitutionally vested in this court, I believe that it is incumbent on the legis-

lature to exercise both deference and restraint when legislating in areas that impinge upon this authority. Specifically, I believe that the legislature should not enact laws affecting the administration of justice in this state without conducting a judicial impact review to determine the impact that such legislation will have upon the court system, both as to cost and to personal efficiency. Had the legislature thoroughly studied the impact of the substitution of judge statute (sec. 971.20, Stats.) upon the entire court system, as did the Resource Planning Corporation in a study summarized in the Wisconsin Case Processing Study Final Report quoted in my concurrence to the decision of *State ex rel. Tarney v. McCormack*, 99 Wis. 2d 220, 238, 239, 298 N.W.2d 552 (1980) (COFFEY, J., concurring), I am convinced that it would not have enacted the law in its present form.

As the majority opinion correctly indicates, the powers of the independent branches of our government overlap to such an extent that it is sometimes difficult to ascertain the proper division of the functions of government between them. On the other hand, there exist some functions, which are most appropriately reserved to a specific branch of the government. This fact was recognized in a recent court decision:

"However, the judicial power, like the executive and legislative powers, possesses constitutional boundaries which can neither be exceeded by the possessor of the power nor intruded upon by one of the other branches." *U.S. v. Brainer*, 515 F. Supp. 627, 631 (D. Md. 1981).

The administration of our courts is a function of government which is primarily the concern and responsibility of the judicial branch. This is because the administration of the courts in both an efficient and fair manner is essential to the fulfillment of the judicial branch's role in our democracy and the judiciary itself is most capable of evaluating and promulgating such rules and proce-

dures as will result in a fair and efficient court system. Primary control of the administration of the courts by the judiciary is essential to the maintenance of an independent and impartial judicial branch. In fact, I seriously doubt that the legislature any longer has the authority to enact such legislation for the authority and responsibility for such rule-making power now rests in the supreme court pursuant to its rule-making power mandated in the 1977 Wisconsin Constitutional Amendment to art. VII, sec. 3.

Inasmuch as this court must have administrative authority over the court system, the court, on the other hand, should be reluctant to alter or interfere with policy decisions made by the executive or legislative branches. These previously determined policy decisions are functions of government that are primarily the concern and responsibility of those branches of our government and the judiciary must refrain from interfering with them except where a clear problem of constitutional dimension is presented.

The importance of administrative autonomy to the maintenance of an independent and effective judiciary was discussed in a recent United States District Court opinion quoted below:

"The significance of administrative autonomy to the maintenance of institutional independence is particularly acute in the case of the Judiciary, which commands far fewer tangible resources than either of the other branches. The Federalist No. 78 (A. Hamilton). The import of avoiding legislative control over the administration of the judicial function was noted by commentators Levin and Amsterdam:

" 'There are spheres of activity so fundamental and so necessary to a court, so inherent in its very nature as a court, that to divest it of its absolute command within these spheres is to make meaningless the very phrase *judicial power*.' [emphasis in original].

" 'Legislative Control Over Judicial Rule Making: A Problem in Constitutional Revision,' 107 U. Pa. L. Rev. 1, 30 (1958). These writers expand their description of these exclusively judicial concerns by suggesting that

". . . there is a third realm of judicial activity, neither substantive nor adjective law, a realm of 'proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power. This is the area of minimum functional integrity of the courts, what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court.' Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid." [footnotes omitted]. *Id.* at 31–32.

The substitution of judge statute concerned in the case at bar has a substantial impact on the effective and efficient administration of the courts. The expanded right to substitute judges freely without cause all too frequently creates delay in the handling of cases and disrupts the overall calendar of the courts, as well as that of the other parties, their counsel and witnesses. Because of the impact of the substitution of judge statute on the administration of the courts, I believe that the appropriate circumstances under which to allow a substitution of judge is a question which might be more appropriately addressed by the judiciary and by the legislature only with substantial input from the judicial branch.

My criticisms of the liberal substitution of judge procedures provided in sec. 971.20, Stats., and its civil counterpart, sec. 801.58, Stats., are set out at length in my concurrence to *State ex rel. Tarney v. McCormack, supra* at 236, and will not be repeated here. I would like to add only that the liberal substitution of judge rules add considerable expense to the operation of our courts as well as causing significant delay. During this time

where the public and all branches of the government are demanding fiscal austerity in government, I believe it is necessary and proper that the legislature evaluate the limited benefits of the liberal substitution of judge rules in light of its significant impact as to cost and efficiency in the judicial system. If the substitution of judge rules are evaluated in this light, I believe the legislature will conclude, as I have, that the statute creates proceedings for the substitution of judges without cause that are unduly expensive, unnecessary and subject to proven abuse where a duly elected judge can be substituted out of his court responsibilities at the whim and caprice of a minority of disgruntled litigants. Indeed, as the majority points out, the vast majority of states, (41 of 50) have not adopted a peremptory substitution of judge rule and, thus, Wisconsin is in the distinct minority of states favoring this kind of substitution of judge rule.